PACHECO FRATICELLI ET AL., demandantes y apelados, *v.* WILLIAM CINTRÓN ANTONSANTI, ETC., demandados y apelantes.

Número: CE-86-94          Resuelto: 30 de junio de 1988

*César Nazario González*, abogado del Hon. Ariel Santiago Veláz-
quez, en su carácter de Presidente de la Asamblea Municipal
de Yauco, apelante; *Noel Pacheco Fraticelli*, abogado de los
apelados.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del
Tribunal.

Disponemos sobre las guías y normas que deben conte-
ner las ordenanzas municipales que regulan los usos de foros
públicos tradicionales.

## I

El Festival del Café, Inc. (en adelante Festival) es una
corporación sin fines de lucro debidamente inscrita en el De-
partamento de Estado y creada en 1976 con el propósito de
organizar y celebrar los actos conmemorativos de la funda-

ción del pueblo de Yauco. Está adscrita al Centro Cultural Amaury Veray Torregrosa de Yauco, Inc. (en adelante Centro Cultural), institución afiliada al Instituto de Cultura Puertorriqueña.

Desde el año de su creación, el Festival ha sido la entidad encargada de coordinar los actos preparativos y la celebración misma de la fundación del pueblo de Yauco. Las fiestas conmemorativas toman lugar durante los últimos días del mes de febrero y primeros de marzo de cada año, pero ya desde meses antes cerca de treinta (30) comités compuestos cada uno de diez (10) personas, junto a entidades y personas privadas, participan en su organización. Según surge de la prueba desfilada y creída por el tribunal de instancia, las fiestas consisten en la celebración de actividades artísticas y culturales tales como exposiciones de artesanía y pintura, certámenes de obras literarias de los géneros de poesía, cuento y drama, recreación de la fiesta del acabe y otorgación de premios a aquellos yaucanos que se han destacado en el campo de las artes.

Cerca de cincuenta mil (50,000) personas participan y asisten al Festival que toma lugar en la plaza de Yauco (Plaza Fernando Pacheco), en las calles que rodean la plaza, en el Parque Arturo Lluberas, en el teatro escolar, en la biblioteca de las escuelas y en varios edificios públicos.

Mientras se estaba en los preparativos de la celebración del duodécimo festival, el 13 de diciembre de 1985 la Asamblea Municipal de Yauco aprobó la Ordenanza Núm. 16, Serie 1985–86, la cual tuvo como motivo lo que en el lenguaje del primer "por cuanto" se expresa:

> Es de conocimiento público que entre varias de las entidades que en años anteriores se ocupaban de la celebración y organización de las actividades que se efectuaban con motivo de la fundación de Yauco, denominadas como Festival del Café, *han surgido lamentables diferencias de criterio.* Estas diferencias, tanto entre las entidades antes señaladas, como

en las diversas facciones o grupos dentro de dichas entidades, indefectiblemente señalan que para el año de 1986, y años venideros, no se podrá[n] celebrar dichas efemérides *con la armonía y el esplendor* que se requiere para la celebración de la fundación de nuestro pueblo. (Énfasis suplido.) Apéndice, pág. 34.

Las diferencias de criterio a que alude la Ordenanza Núm. 16, *supra*, estriban en que en la asamblea convocada para elegir una nueva Junta Directiva del Centro Cultural de Yauco celebrada el 31 de marzo de 1985, dos (2) candidatos propuestos por el Alcalde codemandado para integrar la directiva fueron ampliamente derrotados, provocando tal resultado que el Alcalde, junto a un grupo de alrededor de quince (15) personas, abandonaran el lugar e impugnaran posteriormente los procedimientos habidos en la asamblea. Después de realizada una investigación por parte de funcionarios del Instituto de Cultura Puertorriqueña, la nueva Junta Directiva electa fue debidamente certificada.

Este es el trasfondo que motiva la aprobación de la Ordenanza Núm. 16, *supra*, cuya validez constitucional se cuestiona y que declara que, a los fines de la celebración de la fundación de Yauco, *el municipio asume* la organización y celebración de dicha actividad *y prohíbe* la celebración de *actividad pública alguna sin la previa autorización* del gobierno municipal.[1]

La 4ta sección de la Ordenanza Núm. 16, *supra*, establece:

---

[1] La 2da sección de la Ordenanza Núm. 16, Serie 1985-86, dispone:

"Declara como por la presente se declara [sic], que a los fines de la celebración de la fundación de Yauco, Pueblo del Café, el Municipio de Yauco, como tal y en representación de todo el pueblo, asume la celebración y organización de éstas." Apéndice, pág. 34.

La organización de la actividad bajo la administración municipal estaría a cargo de un comité compuesto por miembros designados por el Alcalde.

Entre los cambios introducidos por la ordenanza, se cambió el nombre de la festividad a "Celebración de la Fundación de Yauco, Pueblo del Café".

El Gobierno Municipal de Yauco, a fin *de no deslucir* esta celebración de la Fundación de Yauco, Pueblo del Café, *no autorizará, organizará, ni celebrará ninguna actividad pública durante el período señalado en la Proclama del Alcalde, que altere los objetivos, metas y propósitos de la celebración de la Fundación de Yauco, Pueblo del Café.* (Énfasis suplido.) Apéndice, pág. 34.

Unos días después de aprobada la Ordenanza Núm. 16, *supra*, la Asamblea Municipal de Yauco aprobó la Ordenanza Núm. 18, Serie 1985–86, con el propósito de enmendar varias secciones de la Ordenanza Núm. 16, *supra*, entre las que se encuentra la Sec. 11, que luego de enmendada lee:

Toda persona que *organize* [sic], *celebre*, o *intente organizar o celebrar, cualquier clase de actividad o festividad,* ya bien sea *religiosa, cultural, cívica* o *social* en la Plaza Fernando de Pacheco o el Parque Arturo Lluberas del Municipio de Yauco, y en las calles aledañas a la Plaza y al Parque, durante los días que mediante Proclama del Alcalde se esté celebrando la Fundación de Yauco, Pueblo del Café, o que establezca o intente establecer kioscos artesanales o comerciales durante dichos días, *sin el correspondiente permiso del Gobierno Municipal de Yauco, incurrirá en delito menos grave,* y convicta que fuere, se le castigará con una multa no menor de cien dólares ($100.00) ni mayor de quinientos dólares ($500.00), o cárcel por un término no menor de treinta (30) días, o ambas penas a discresión [sic] del Tribunal. (Énfasis suplido.) Apéndice, pág. 37.

Por entender los apelados que la celebración del duodécimo festival estaba proscrito por las ordenanzas mencionadas y que tal proscripción infringía, entre otros, sus derechos de libertad de expresión y asociación consagrados por la Constitución del Estado Libre Asociado de Puerto Rico, presentaron en el Tribunal Superior, Sala de Ponce, una petición de entredicho provisional e *injunction* preliminar y permanente, con el fin de que ambas ordenanzas fueran declaradas inconstitucionales de su faz. El tribunal de instancia, si bien se negó a emitir una orden de entredicho

provisional, dictó, previa celebración de vista al efecto, la sentencia siguiente:

En base a [sic] las anteriores determinaciones de hechos y conclusiones de derecho el Tribunal dicta Sentencia declarando [sic] Con Lugar la demanda y, en su consecuencia, declara inconstitucionales las Ordenanzas números 16 y 18, Serie 1985–86, del Municipio de Yauco y ordena a los demandados [que] cesen y desistan de impedir, por ellos o a través de terceras personas y de cualquier forma y manera, que los demandantes organicen y celebren la actividad denominada El Festival del Café, todo ello bajo apercibimiento de desacato. Apéndice, pág. 33.

El tribunal determinó que las ordenanzas eran vagas y excesivamente amplias, y privaban a los demandantes de sus derechos a un debido proceso de ley, a la igual protección de las leyes y a la libertad de expresión y asociación.

Inconformes con el dictamen del tribunal de instancia, los demandados acuden ante nos mediante la presentación de un escrito de apelación. Hacen cuatro (4) señalamientos de error que se reducen, en esencia, a dos (2):

1. Improcedencia del *injunction* permanente para impedir la aplicación y observancia de una ordenanza municipal sin que previamente, mediante sentencia final, firme, inapelable e irrevisable, se hubiera determinado que la misma es inconstitucional o inválida.

2. Erró el tribunal de instancia al resolver que las Ordenanzas Núm. 16 y Núm. 18 restringen los derechos de libre expresión y asociación de los demandantes y que la Ordenanza Núm. 16, por sí misma, adolece de vaguedad y demasiada amplitud violando así el derecho de los demandantes al debido procedimiento de ley y a la igual protección de las leyes.

Examinados los escritos de las partes, estamos en posición de resolver.

## II

▮ Los municipios son criaturas de la Asamblea Legislativa, que constitucionalmente tiene la "facultad para crear, suprimir, consolidar y reorganizar . . . lo relativo a su régimen y función; y podrá autorizarlos, además, a desarrollar programas de bienestar general y a crear aquellos organismos que fueren necesarios a tal fin". Art. VI, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 362. Los municipios constituyen una entidad jurídica mediante la cual el Estado puede atender de manera más efectiva "el bienestar social y económico de un conglomerado vecinal específico, de acuerdo con sus necesidades y urgencias en particular". *Colón v. Municipio de Guayama*, 114 D.P.R. 193, 199 (1983); *Vélez v. Municipio de Toa Baja*, 109 D.P.R. 369 (1980); F. Albi, *Derecho municipal comparado del mundo hispánico*, Madrid, Ed. Aguilar, 1955, pág. 21; E. Córdova, *Curso de Gobierno Municipal*, Río Piedras, Ed. Universitaria, 1964.

▮ Estas entidades gubernamentales son células básicas de nuestro complejo tejido social, político y económico. Su intervención con la persona y la vida comunitaria parece intensificarse.

Recientemente nos hemos expresado sobre la constitucionalidad de ordenanzas municipales que reglamentan diversas actividades. En *Vélez v. Municipio de Toa Baja*, supra, nos expresamos sobre la validez constitucional de una ordenanza municipal que controlaba la venta de bebidas embriagantes; en *Pueblo v. Hernández Colón*, 118 D.P.R. 891 (1987), sobre una ordenanza que controlaba el lugar de consumo de dichas bebidas; en *Salas v. Municipio de Moca*, 119 D.P.R. 625 (1987), sobre una ordenanza que prohibía el estacionamiento de vehículos públicos en las calles principales del pueblo, y más reciente aún, en *American Express Co. v. Mun. de San Juan*, 120 D.P.R. 339 (1988), y en *Banco Popu-*

*lar v. Mun. de Mayagüez*, 120 D.P.R. 692 (1988), sobre las facultades de los municipios para imponer el pago de patentes municipales.

## III

Aunque la parte apelante no cuestiona la capacidad jurídica (*standing*) de los apelados para cuestionar la validez constitucional de la ordenanza municipal, hemos considerado el asunto.

En vista de la tendencia actual hacia la liberalización de las normas que rigen las determinaciones sobre si una parte tiene legitimación activa (*standing*), *Salas Soler v. Srio. de Agricultura*, 102 D.P.R. 716 (1974); *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982); las particulares circunstancias de este caso, el reconocimiento por la Asamblea Legislativa del Festival mediante la asignación de $10,000 anuales (R.C. de la C. Núm. 677 de 9 de julio de 1985, págs. 562, 580; R.C. de la C. Núm. 2549 de 2 de julio de 1987, págs. 534, 558); el interés público involucrado y tratándose éste de un recurso en que está implicada una instrumentalidad gubernamental, *Solís v. Municipio de Caguas*, 120 D.P.R. 53 (1987), y *Asociación de Maestros v. Pérez, Gobernador Int.*, 67 D.P.R. 848 (1947), concluimos que actuó correctamente el tribunal de instancia al considerar el recurso. K.C. Davis, *The Liberalized Law of Standing*, 37 U. Chi. L. Rev. 450 (1970); L.L. Jaffe, *Standing Again*, 84 Harv. L. Rev. 633 (1971); M. Rohr, *Fighting for the Rights of Others: The Troubled Law of Third-Party Standing and Mootness in the Federal Courts*, 35 U. Miami L. Rev. 393 (1981); *Virginia v. American Booksellers Assn.*, 484 U.S. 383 (1988).

Analizamos a continuación los dos (2) señalamientos de errores ya apuntados.

El primer señalamiento de error sobre la improcedencia del *injunction* permanente para impedir la aplicación

y observancia de la ordenanza municipal es inmeritorio. Los apelantes se remiten a un estado de derecho inexistente desde hace más de trece (13) años como fundamento de su argumentación. Pasan por alto que la Ley Núm. 12 de 8 de agosto de 1974 (32 L.P.R.A. sec. 3524), que enmendó el Art. 3 de la Ley Núm. 1 de 25 de febrero de 1946, permite ahora que el tribunal de instancia dicte una orden de entredicho provisional, *injunction* preliminar o permanente, que en su parte pertinente dispone:

(2) Cuando en la petición se alegue que alguna persona, bajo la autoridad de alguna ley, ordenanza, o reglamento del Estado Libre Asociado de Puerto Rico, esté privando o sea el causante de que alguien esté privando al peticionario de algún derecho, privilegio o inmunidad protegido por la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o por la Constitución o leyes de los Estados Unidos de América que sean aplicables a las personas bajo la jurisdicción del Estado Libre Asociado de Puerto Rico. 32 L.P.R.A. sec. 3524(3)(2).

Esta disposición es de aplicación a las ordenanzas aprobadas por los municipios, pues así lo dispone su texto.

## IV

Los apelados alegaron en su petición que las ordenanzas en cuestión violaban sus derechos de libertad de expresión y asociación, a la igual protección de las leyes y a un debido proceso, garantizados por la Carta de Derechos de nuestra Constitución, por lo que el tribunal de instancia estaba facultado en ley para expedir el *injunction*, luego de concluir probada la violación, como lo hizo en el caso de autos.

En vista del análisis y conclusión a que llegamos sobre la vaguedad de las ordenanzas en controversia, es innecesario profundizar en los planteamientos constitucionales que se nos hacen sobre libertad de expresión y de asociación.

El Estado y los gobiernos municipales tienen facultad para reglamentar el uso de sus propiedades. Sin em-

bargo, al hacerlo deben proveer guías y normas adecuadas para que los funcionarios encargados de poner en ejecución dicha reglamentación no lo hagan arbitraria e irrazonablemente. Ello es particularmente importante cuando se trata de la concesión o denegación de una autorización o permiso para el uso de un foro público tradicional.

En *Vives Vázquez v. Tribunal Superior*, 101 D.P.R. 139, 145–146 (1973), adoptamos las expresiones sobre vaguedad de estatutos expresados por el Tribunal Supremo de Estados Unidos en *Grayned v. City of Rockford*, 408 U.S. 104 (1972), a los efectos de que:

> "Es un principio básico del debido procedimiento que una ley es nula por vaguedad si sus prohibiciones no están claramente definidas. Las leyes imprecisas violentan diversos valores importantes. Primero, porque asumimos que el hombre es libre para elegir entre la conducta legal e ilegal, insistimos que las leyes den a la persona de ordinaria inteligencia una oportunidad razonable para saber qué está prohibido, de modo que pueda actuar en concordancia con ese conocimiento. Las leyes imprecisas pueden engañar al inocente al no proveer un aviso adecuado. Segundo, si ha de prevenirse la aplicación arbitraria y discriminatoria, las leyes deben proveer normas claras para aquellos que las aplican. Una ley vaga delega, de modo no permisible, cuestiones básicas de política a policías, jueces y jurados para ser resueltas sobre bases subjetivas y *ad hoc*, con los consiguientes peligros de aplicación arbitraria y discriminatoria. Tercero, pero relacionado, cuando un estatuto impreciso 'empalma con áreas sensitivas de las libertades básicas garantizadas por la Primera Enmienda' 'opera para inhibir el ejercicio de [esas] libertades'. Los significados inciertos inevitablemente llevan a los ciudadanos a 'permanecer mucho más lejos de la zona ilegal' . . . que si las fronteras de las áreas prohibidas estuviesen claramente demarcadas".

Resumiendo, una ley adolece de vaguedad si: (1) una persona de inteligencia promedio no queda debidamente

advertida del acto u omisión que el estatuto pretende prohibir y penalizar; (2) se presta a la aplicación arbitraria y discriminatoria, y (3) interfiere con el ejercicio de derechos fundamentales garantizados por la Constitución. *Pueblo v. Hernández Colón*, supra. El concepto de vaguedad en su esencia se refiere a la percepción que la persona de inteligencia promedio puede hacer de la reglamentación. Nota, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. Pa. L. Rev. 67 (1960); D. Nevares-Muñiz, *Código Penal de Puerto Rico*, San Juan, Ed. Rev. C. Abo. P.R., 1987, pág. 17; L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, Sec. 12-31, pág. 1033; R.D. Rotunda, J.E. Nowak y J.N. Young, *Treatise on Constitutional Law*, Minnesota, Ed. West Publishing Co., 1986, Vol. 3, Sec. 20.9.

Tales principios son de igual aplicación a las ordenanzas municipales.

■ Por otra parte, cuando la reglamentación municipal se refiere al uso de propiedades del Gobierno que son foros públicos tradicionales, se requieren guías y normas más detalladas, pues dicha reglamentación puede estar regulando indirectamente las ideas o expresión de personas o grupos. Tribe, *op. cit.*, Cap. 12.

Constituyen estos foros públicos tradicionales las calles, parques y plazas públicas. *Boos v. Barry*, 485 U.S. 312 (1988); *Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37 (1983).(2)

■ En estos foros no se puede prohibir en forma absoluta las actividades de expresión, reglamentar el contenido

---

(2) Al referirnos a la jurisprudencia federal lo hacemos con el propósito persuasivo que ésta tiene y no para fundamentar el resultado al que llegamos, el cual se apoya en la Constitución del Estado Libre Asociado de Puerto Rico y en nuestra jurisprudencia. *Michigan v. Long*, 463 U.S. 1032 (1983).

de éstas y establecer clasificaciones por razón de materia o del contenido del mensaje. *Aponte Martínez v. Lugo*, 100 D.P.R. 282 (1971); *Rodríguez v. Srio. de Instrucción*, 109 D.P.R. 251 (1979); *Sánchez Carambot v. Dir. Col. Univ. Humacao*, 113 D.P.R. 153 (1982); *Salas v. Municipio de Moca*, supra.

Las ordenanzas municipales que regulan el uso de los foros públicos tradicionales deben contener guías y normas neutrales sobre el tiempo, lugar y manera en que se puede utilizar dicho foro. *Miami Herald Pub. Co. v. City of Hallandale*, 734 F.2d 666 (11mo Cir. 1984).[3] La ausencia de dichas guías y normas convierten la ordenanza en vaga y da base a que en su implantación se utilicen criterios subjetivos en vez de criterios objetivos y neutrales por los funcionarios que otorgan los permisos. *Cox v. New Hampshire*, 312 U.S. 569 (1941); *Kunz v. New York*, 340 U.S. 290 (1951); *Walker v. City of Birmingham*, 388 U.S. 307 (1967); *Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969). La reglamentación que delega amplios poderes discrecionales en funcionarios encargados de otorgar permisos para el uso de foros públicos tradicionales, sin las guías y normas ya indicadas, adolece de vaguedad. *Lovell v. Griffin*, 303 U.S. 444, 450–453 (1938); *Cantwell v. Connecticut*, 310 U.S. 296, 305–307 (1940); *Airport Comm'rs v. Jews for Jesus, Inc.*, supra; Nowak, Rotunda y Young, *op. cit.*, Sec. 20.47.

Desde tiempos inmemoriales los parques, las plazas y las calles en Puerto Rico han constituido foros de divulgación, de intercambio y de crítica de ideas. Es en ellos en

---

(3) La reglamentación de foros públicos que regule la expresión en tiempo, lugar y manera tiene que ser neutral en su contenido, estar redactada en términos limitados para promover un interés gubernamental significativo y debe proveer amplias alternativas de medios de comunicación. *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37 (1983).

donde la conciencia ciudadana y particular forma de ver el mundo tienen impacto y repercuten. Son los foros públicos por excelencia para la divulgación y expresión de ideas. Las calles en particular constituyen un instrumento eficaz de divulgación de ideas accesible para aquellos individuos y grupos que no cuentan con suficientes recursos económicos y que no tienen, por tanto, acceso a los medios de comunicación masiva como lo son la radio, la televisión y la prensa. *Los derechos de expresión y el uso de las vías públicas en Puerto Rico*, Comisión de Derechos Civiles de Puerto Rico, 1971. Por ello se requieren guías y normas adecuadas en la reglamentación de su uso.

## V

Las ordenanzas municipales aprobadas por el Municipio de Yauco, si bien son neutrales de su faz y no establecen clasificaciones, adolecen de vaguedad y son demasiado amplias. Las mismas no contienen guías y normas adecuadas sobre tiempo, lugar y manera para el uso de los foros públicos tradicionales que regulan. El ejercicio de la discreción de los funcionarios encargados de conceder los permisos no está enmarcado dentro de guías y normas adecuadas. Ello da margen a que la concesión o denegación de permisos esté regida por los criterios subjetivos del funcionario encargado de ello.

Mediante las mismas el Municipio de Yauco asume la organización y celebración del Festival y *prohíbe* la celebración de cualquier actividad pública sin el correspondiente permiso del gobierno municipal, constituyéndola en delito público. La ordenanza adolece de sobreextensión al estar redactada en una forma demasiado abarcadora. *Broadrick v. Oklahoma*, 413 U.S. 601 (1973); *New York v. Ferber*, 458 U.S. 747 (1982); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985).

Las únicas guías o normas que se ofrecen para enmarcar el ejercicio de la discreción municipal en la concesión o denegación de permisos son: (1) el no deslucir la celebración del Festival y (2) el no alterar los objetivos, metas y propósitos de la misma. Todo ello justificado por las "lamentables diferencias de criterio" y el temor a que las efemérides no se puedan celebrar "con la armonía y esplendor que se requiere". Las ordenanzas no disponen cuáles son los objetivos, metas y propósitos del Festival ni dan mayores guías y normas que las ya reseñadas. Las mismas están redactadas de forma tal que una persona de inteligencia promedio no queda debidamente advertida de los criterios a utilizarse en la concesión o denegación de permisos.

La Sec. 11 de la Ordenanza Núm. 18, *supra*, tipifica como delito menos grave la conducta de cualquier "persona que organize [sic], celebre, o intente organizar o celebrar, cualquier clase de actividad o festividad, ya bien sea religiosa, cultural, cívica o social . . .". Apéndice, pág. 37. La vaguedad de las guías y normas para la concesión o denegación de permisos afectan a su vez la disposición penal, pues se prohíben actividades generales sin ofrecer guías y normas sobre cuáles requieren permiso y cuáles no.

Por los fundamentos expuestos, *se confirma la sentencia apelada*.

El Juez Asociado Señor Ortiz concurre con el resultado con opinión escrita. El Juez Asociado Señor Negrón García concurre con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López disiente por entender que en el presente caso no existe "caso o controversia", razón por la cual la sentencia dictada por el tribunal de instancia —confirmada por este Tribunal mediante la opinión mayoritaria que se emite— resulta ser una opinión consultiva.

—O—

Opinión concurrente del Juez Asociado Señor Ortiz.

El mandato y la obligación legal, personal y moral que asumí al prestar juramento, primero como abogado y luego como magistrado, me imponen el deber de salvaguardar los derechos constitucionales de los ciudadanos contra actuaciones arbitrarias, caprichosas e inconstitucionales del Estado y sus funcionarios. Al evaluar estas actuaciones debemos tener presente que: "Rehusamos las normas e interpretaciones que conduzcan a un resultado contrario a la buena fe. Reafirmamos que '[e]l contenido de eticidad de cada acto deberá examinarse a la luz de sus circunstancias particulares, pero el comportamiento conforme a la buena fe es precepto general que abarca toda actividad jurídica'." (Cita omitida y énfasis suprimido.) *Berríos v. U.P.R.*, 116 D.P.R. 88, 99 (1985). Véase opinión disidente del suscribiente en *Pueblo v. Rivera Arroyo*, 120 D.P.R. 114, 123 (1987).

Dentro de ese marco me veo impedido de dar mi conformidad a la opinión del Tribunal. Entiendo que al limitar el análisis y fundamentar el resultado en los conceptos constitucionales sobre vaguedad de estatutos, el Tribunal ignora la raíz del problema que implica este caso. La ordenanza no puede ser invalidada por este Tribunal por la única razón de que indirectamente afecte los derechos constitucionales de los ciudadanos interesados. Sobre ello puede haber criterios en contrario, ya que de ser válida la parte principal de la ordenanza en cuanto y en tanto elimina a los demandantes, y a las asociaciones que representan, de toda participación en la celebración del Festival en Yauco(1) y asumir el municipio la total responsabilidad de dicha actividad cultural, podría

---

(1) Para lo que la Asamblea Legislativa había asignado la cantidad de $10,000 a los ciudadanos particulares miembros de las organizaciones demandantes. Véase R.C. de la C. Núm. 87 de 9 de julio de 1985, pág. 562.

entenderse que constituye un fin público o interés apremiante el reglamentar el uso de las facilidades públicas para que no se llevaran a cabo dos (2) o más actividades simultáneas. Visto el limitado alcance de la ordenanza, podríamos discrepar del análisis que se hace en la opinión. Pero mi opinión es que bajo los hechos particulares presentes, según correctamente reseñados por la juez de instancia y la opinión del Tribunal, se hace innecesario resolver si la ordenanza es nula por ser vaga, imprecisa y amplia.

En este caso lo que hubo, llana y simplemente, fue una actuación arbitraria, caprichosa y carente de los más elementales principios de buena fe por parte del Alcalde y de la Asamblea Municipal que él controla. En un acto de revanchismo, por la única razón aparente de que los asociados al Festival y/o al Centro Cultural Amaury Veray Torregrosa de Yauco, Inc. derrotaron, en una asamblea válida, a los candidatos propuestos por el Alcalde, éste y sus seguidores de golpe y porrazo eliminan, después de once (11) años, a los demandantes de toda participación e ingerencia en la celebración del Festival. Repetimos, por un acto revanchista se da al traste con el fruto de la labor que por un largo tiempo llevaban a cabo estos ciudadanos de la histórica ciudad.

De la prueba creída por el tribunal de instancia no surge otra razón para la actuación gubernamental. Esto constituye un claro abuso del poder gubernamental.

De manera que independientemente de si hubo o no una violación a los derechos constitucionales específicos, los actos caprichosos y arbitrarios de los demandados no pueden sostenerse.

Por las razones expuestas, estoy de acuerdo con que se confirme la sentencia apelada.(2)

_____

(2) Estoy conforme con la parte III de la opinión. Las alegaciones de la demanda eran suficientes para que el tribunal asumiera jurisdicción en el caso y

considerara el *injunction* solicitado. De todas maneras, cualquier error quedó convalidado al consolidarse las vistas de *injunction* preliminar y permanente con la sentencia declaratoria. Véase Minuta de 9 de enero de 1986.