# 2002 DTA 145

**TRIBUNAL DEL CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I, PANEL IV DE SAN JUAN**

MUNICIPIO AUTONOMO DE CAROLINA
Demandante-Apelante

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO, ETC.
Demandados-Apelados

Núm. KLAN-01-00725

San Juan, Puerto Rico, a 30 de septiembre de 2002

Panel integrado por su Presidente, el Juez Gierbolini,
el Juez Rodríguez Muñiz y el Juez Brau Ramírez

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 23 de julio de 2001, el Municipio Autónomo de Carolina compareció ante este Tribunal mediante Escrito de Apelación y nos solicitó la revocación de la Sentencia emitida el 7 de mayo de 2001, notificada el 21 de mayo de 2001, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicha sentencia, el Tribunal de Primera Instancia determinó que la Ley Número 29 del 1 de julio de 1997 no viola las cláusulas constitucionales de igual protección de las leyes y debido proceso de ley, y que la misma no es incompatible con la Ley de Municipios Autónomos, Ley Número 81 del 30 de agosto de 1991, 21 L.P.R.A. Sección 4001, *et seq.*

Por los fundamentos que expondremos, **CONFIRMAMOS** la Sentencia apelada.

### I

La Ley Número 72 del 7 de septiembre de 1993, 24 L.P.R.A Sección 7001, *et seq*, (en adelante Ley 72), fue promulgada para crear la Administración de Seguros de Salud de Puerto Rico (en adelante ASES) e impuso a ésta la responsabilidad de implantar, gestionar y negociar planes de seguros de salud que permitieran obtener servicios médico-hospitalarios de calidad para sus asegurados médico-indigentes. En lo pertinente, el Artículo VI, Sección 11 (d) de dicha ley establecía que las aportaciones de los gobiernos municipales para servicios de salud directos en áreas cubiertas por los seguros de salud serían negociadas con los municipios correspondientes

utilizando como base la asignación presupuestaria municipal del año fiscal 1993-94 en dólares constantes.

Por su parte, la Ley Número 29 del 1 de julio de 1997 (en adelante Ley 29) enmendó el citado artículo para disponer que las aportaciones de los gobiernos municipales serían computadas según una tabla de aportaciones fijas basadas en un por ciento del presupuesto ordinario de los municipios correspondientes al año fiscal anterior. La Ley 29, *supra*, también dispuso que el Centro de Recaudación de Ingresos Municipales de Puerto Rico (en adelante CRIM) retendría dichas aportaciones de las remesas mensuales de cada municipio y las remitiría a la ASES.

Así las cosas, el 7 de octubre de 1998 el Municipio Autónomo de Carolina (en adelante Municipio) presentó Demanda de Sentencia Declaratoria e *Injunction* Preliminar y Permanente contra el Estado Libre Asociado de Puerto Rico (en adelante ELA), la ASES y el CRIM. En la misma, el Municipio expuso que la Ley Número 29, *supra*, era incompatible con la Ley de Municipios Autónomos, *supra*, e inconstitucional porque la misma infringía la cláusula constitucional de igual protección de las leyes y privaba al Municipio y sus constituyentes de sus derechos sin el debido proceso de ley.

En síntesis, el Municipio alegó que el esquema de financiamiento establecido por la Ley 29, *supra*, era arbitrario y opresivo porque provocaba un déficit operacional y lo privaba de recursos económicos que sirvieran para anticipar y absorber el efecto inflacionario en su presupuesto y en su capacidad económica para mantener el ritmo de prestación de servicios que él proveía. El Municipio también alegó que el referido esquema de financiamiento era confiscatorio porque estaba desprovisto de otros criterios, tales como el número de ciudadanos indigentes en cada municipio.

Por lo tanto, el Municipio solicitó al Tribunal de Primera Instancia que declarara inconstitucional la Ley 29, *supra*; expidiera un *injunction* permanente contra el CRIM para que éste sólo retuviera de los fondos pertenecientes al Municipio aquella cantidad que no excediera la acordada por el Municipio con la ASES; y ordenara al CRIM devolver al Municipio todas las sumas cobradas y retenidas en exceso de la aportación acordada.

El 16 de octubre de 1998, la ASES presentó *"Moción de Desestimación de Solicitud de Injunction Preliminar"*. En la misma, ASES alegó que la demanda era prematura y basada en especulaciones, que un *injunction* preliminar no podía ser utilizado para paralizar la implantación y efectividad de una ley y que faltaban partes indispensables.

El 27 de octubre de 1998, el Municipio presentó *"Aviso de Desistimiento de Injunction Preliminar y Reiteración de Solicitud de Injunction Permanente"*, y el 29 de octubre de 1998, el Municipio presentó Demanda Enmendada. En ésta, el Municipio alegó que *"la erosión de fondos municipales forzada por la Ley Número 29 impide sustancialmente que el municipio pueda cumplir con proyectos que corresponden a su planificación estratégica y priva a los residentes del beneficio de disfrutar del valor total de los recaudos destinados para la satisfacción de sus necesidades básicas."*

El 4 de noviembre de 1998, notificada el 6 de noviembre de 1998, el Tribunal de Primera Instancia emitió Resolución y dio por desistido el *injunction* preliminar solicitado por el Municipio. El 13 de noviembre de 1998, la ASES contestó la demanda enmendada y alegó que ésta no exponía hechos que justificaran la concesión de un remedio, y que la Ley 29, *supra*, era constitucional y no infringía la Ley de Municipios Autónomos, *supra*. La ASES también alegó que la Ley 29, *supra*, establecía una aportación razonable y proporcionalmente equitativa y que ésta no era de naturaleza confiscatoria ni representaba un despojo impermisible e inconstitucional del presupuesto del Municipio.

Luego de múltiples incidentes procesales, el 27 de enero de 2000, las partes presentaron Informe de

Conferencia con Antelación al Juicio. En éste, las partes expusieron sus teorías y argumentaciones de derecho y estipularon los hechos que no estaban en controversia. El Tribunal de Primera Instancia celebró varias conferencias con antelación al juicio, y durante el transcurso de las mismas, las partes acordaron someter el caso para su disposición mediante estipulaciones de hechos y memorandos de derecho sin la necesidad de celebrar una vista evidenciaria.

El 7 de junio de 2000, el Municipio y la ASES presentaron sendos Memorandos de Derecho. El 6 y 14 de julio de 2000, respectivamente, el ELA y el CRIM presentaron *"Moción Uniéndonos al Memorando de Derecho Presentado por la Administración de Seguros de Salud de Puerto Rico"*. El 9 de agosto de 2000, la ASES presentó Réplica al memorando de derecho del Municipio, y el 4 de mayo de 2001, el Municipio presentó Dúplica a la réplica de la ASES.

Luego de analizar toda la evidencia documental ante sí, el 7 de mayo de 2001, notificada el 22 de mayo de 2001, el Tribunal de Primera Instancia emitió Sentencia por voz de la Juez, Honorable Dora Peñagarícano Soler y declaró No Ha Lugar la demanda presentada por el Municipio. Instancia determinó que la Ley 29, *supra*, no creaba una clasificación que activara la protección constitucional de igual protección de las leyes, y no era arbitraria porque estaba razonablemente relacionada con el interés gubernamental de proveer servicios médico-hospitalarios de calidad a todos los sectores de la ciudadanía. Además, el Tribunal de Primera Instancia determinó que, según la Ley de Municipios Autónomos, *supra*, la autonomía de los municipios estaba subordinada y debía ser ejercitada de acuerdo con la Constitución del ELA y sus leyes y que la Asamblea Legislativa estaba constitucionalmente autorizada a imponer obligaciones a los municipios mediante legislación a tales efectos.

Específicamente, el Tribunal de Primera Instancia determinó lo siguiente:

*"Adviértase que la Ley Núm. 29, supra, crea un mecanismo de aportación municipal en el cual mientras mayor sea el presupuesto de los municipios, mayor es la aportación que éstos tienen que asignar a ASES y así ésta poder cumplir con la política pública de salud establecida por la legislación. Los municipios con presupuestos similares tienen la obligación de aportar el mismo por ciento de dicho presupuesto a ASES. Evidentemente, el mencionado esquema brinda trato similar a municipios similarmente situados por lo que no se crea clasificación que active la referida cláusula constitucional.*

*...*

*Asimismo, independientemente del hecho de que la Asamblea Legislativa esté facultada a imponer la obligación al Municipio de Carolina de aportar al financiamiento de la Reforma de Salud, de los hechos estipulados por las partes no surge que dicha imposición haya sido irrazonable. La Ley Núm. 29, supra, obligó a los municipios a aportar a la Reforma de Salud de conformidad a su capacidad económica teniendo como base el presupuesto de fondos ordinarios. Artículo I de la Ley Núm. 29, supra. 24 L.P.R.A. 7035. Siendo el Municipio de Carolina uno de los municipios con mayor presupuesto, la aportación de éstos debe ser mayor. De igual forma, el Municipio de Carolina es el quinto municipio con mayor número de personas aseguradas en el Plan de Seguros del Gobierno. Es decir, que los residentes del Municipio de Carolina se han beneficiado de los servicios ofrecidos. Estos se han convertido en beneficiarios de una política pública que persigue propiciar acceso a servicios médico-hospitalarios de calidad a los diversos sectores de la ciudadanía."* ■

No conforme, el 23 de julio de 2001, el Municipio compareció ante nos mediante el presente Escrito de Apelación y solicitó la revocación de la sentencia emitida por el Tribunal de Primera Instancia. En síntesis, el Municipio alegó que Instancia erró al declarar que la Ley 29, *supra*, era constitucional porque ésta no violaba la cláusula de igual protección ante las leyes y al determinar que la misma no interfería indebidamente con la Ley de Municipios Autónomos, *supra*, y con los recursos financieros y derechos adquiridos del Municipio.

El Municipio también alegó que *"la Ley Número 29 resulta contraria a todo el esquema establecido por la Ley de Municipios Autónomos, ya que altera el esquema autonómico municipal, priva al Municipio de recursos fiscales y derrota los derechos adquiridos que emergen de la Ley de Municipios Autónomos"* y que *"es irrazonable y contrario a la Ley de Municipios Autónomos el esquema de financiamiento impuesto por el Gobierno Central al Municipio de Carolina mediante el cual el demandante subsidia con fondos ordinarios no sólo los médico-indigentes de su municipio, sino también el (sic) de otros municipios de la Región Noreste, sin que el Estado haya establecido una necesidad apremiante para ello."*

El 8 de octubre de 2001, el ELA presentó su Alegato y solicitó la confirmación de la sentencia apelada. El ELA alegó que el Municipio carecía de derechos constitucionales frente al Estado porque, al igual que todos los municipios del ELA, éste era una criatura de la Asamblea Legislativa que no poseía autonomía total respecto al Gobierno Central y que la autonomía conferida al Municipio en virtud de la Ley de Municipios Autónomos, *supra*, estaba subordinada y debía ser ejercitada de acuerdo con las leyes y Constitución del ELA.

Además, el ELA alegó que los mecanismos de financiamiento establecidos por la Ley 29, *supra*, guardaban un nexo racional con el objetivo de la misma; que los fondos retenidos en virtud de la Ley 29, *supra*, eran fondos públicos; que *"los residentes de un Municipio no tienen la expectativa de que los presupuestos aprobados permanezcan inalterados"* y que *"el sistema de aportaciones municipales a base del presupuesto de cada municipio no constituye una clasificación arbitraria ni caprichosa, pues los municipio igualmente situados en términos de presupuesto reciben trato similar bajo la ley impugnada."*

El 9 de noviembre de 2001, la ASES presentó su Alegato y solicitó la confirmación de la sentencia apelada. La ASES alegó que la Ley de Municipios Autónomos, *supra*, no alteró la organización y el funcionamiento de los municipios en su relación con el Gobierno Central y que el Municipio tenía facultad para enmendar su presupuesto con posterioridad a su aprobación *"haciendo ajustes o redistribución de partidas según estime conveniente y necesario."*

La ASES también alegó que *"estamos ante un apremiante interés público de primer orden y de rango constitucional, el cual es, la salud del pueblo puertorriqueño, en particular de nuestros pacientes médico-indigentes";* que las clasificaciones establecidas por la Ley 29, *supra*, eran fijas y estaban aplicadas *"de manera imparcial y objetiva a todos los municipios de acuerdo con su capacidad económica"* y que *"se trata de un simple cálculo matemático donde no hay ningún tipo de aplicación selectiva; todo lo contrario, para situaciones idénticas, se aplica un trato igual."*

Aunque el CRIM no ha comparecido ante nos, procederemos a resolver sin el beneficio de su comparecencia.

## II

Los municipios son entidades jurídicas creadas por la Asamblea Legislativa en virtud del Artículo VI, Sección 1 de la Constitución de Puerto Rico. Dicha disposición constitucional también confiere al poder legislativo la autoridad para *"crear, suprimir, consolidar y reorganizar municipios, modificar sus límites territoriales y determinar lo relativo a su régimen y función."* Por ello, los municipios sólo poseen los poderes expresamente delegados por el legislador, *Café Rico, Inc. v. Municipio de Mayagüez*, \_\_\_\_ D.P.R. \_\_\_\_ (2001), **2001 J.T.S. 152**, página 332; *First Bank de Puerto Rico v. Municipio de Aguadilla*, \_\_\_\_ D.P.R. \_\_\_\_ (2001), **2001 J.T.S. 9**, página 784; *F.D.I.C. v. Mun. de San Juan*, 134 D.P.R. 385, 391 (1993); *Pacheco Fraticelli v. Cintrón Antonsanti*, 122 D.P.R. 229, 236 (1988); *Colón v. Municipio de Guayama*, 114 D.P.R. 193, 198 (1983).

Mediante la creación de los municipios, el Estado puede atender de forma mucho más satisfactoria el bienestar social y económico de un conglomerado vecinal específico, de acuerdo con sus necesidades y urgencias en particular. Sin embargo, los municipios no son soberanos por sí mismos, y al ser criaturas del

Estado subordinadas a éste, la Asamblea Legislativa no puede delegarle más poderes e inmunidades que los que el Estado posee, *Pacheco Fraticelli v. Cintrón Antonsanti, supra*, página 236; *Banco Popular v. Mun. de Mayagüez*, 120 D.P.R. 692, 696 (1988); *Colón v. Municipio de Guayama, supra*, página 199.

Por su parte, la Ley de Municipios Autónomos, *supra*, es la piedra angular de la Reforma Municipal de 1991. La misma otorgó a los municipios un mayor grado de autonomía fiscal y de gobierno propio, además de nuevos instrumentos administrativos y fiscales. Ese nuevo ordenamiento también transfirió a los municipios funciones del Gobierno de Puerto Rico para poder atender de forma directa las necesidades de la ciudadanía, *Municipio de Ponce v. Autoridad de Carreteras y Transportación*, ____ D.P.R. ____ (2001), **2001 J.T.S. 3**, página 656; *Mun. San Juan v. Banco Gub. Fomento*, 140 D.P.R. 873, 886-887 (1996); *Alcalde Mun. de Humacao v. Ramos Cofresí*, 140 D.P.R. 587, 595-596 (1996). No obstante, cabe señalar que dicha autonomía quedó subordinada a la Constitución y leyes del Estado Libre Asociado de Puerto Rico, Artículo 1.005 de la Ley de Municipios Autónomos, *supra*.

## III

De otro lado, el Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico consagra la Carta de Derechos. En específico, la Sección 7 dispone lo siguiente:

*"Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad. No existirá la pena de muerte. Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. Las leyes determinarán un mínimo de propiedad y pertenencias sujetas a embargo."*

Al analizar la cláusula constitucional de igual protección de las leyes, los tribunales pueden utilizar los siguientes criterios: a) escrutinio estricto o examen minucioso; b) escrutinio tradicional mínimo o nexo racional; y c) escrutinio intermedio, *Defendini Collazo, et al. v. E.L.A., Cotto*, 134 D.P.R. 28, 60 (1993); *Almodóvar v. Méndez Román*, 125 D.P.R. 218, 254 (1990); *León Rosario v. Torres*, 109 D.P.R. 804, 813 (1980).

El escrutinio estricto dispone el análisis más riguroso de la ley y es utilizado cuando está presente una clasificación sospechosa. Las clasificaciones sospechosas son aquellas establecidas por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas y nacionalidad, *Defendini Collazo, et al. v. E.L.A., Cotto, supra*, página 61; *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562, 581-582 (1992).

También, el escrutinio estricto es utilizado cuando la ley infringe derechos fundamentales. Entre estos derechos están el derecho al voto, a la protección de ley contra ataques abusivos a la honra y el derecho a la intimidad. Ello quiere decir que la inconstitucionalidad de la ley es presumida y que el Estado tiene el peso de probar que existe un interés público apremiante que justifique la clasificación y que ésta promueve necesariamente la consecución de ese interés, *Soto Ortega v. Administración de Instituciones Juveniles*, ____ D.P.R. ____ (1999), **99 J.T.S. 109**, página 1264; *Pérez Vega v. Procurador Especial de Relaciones de Familia*, ____ D.P.R. ____ (1999), **99 J.T.S. 70**, página 963; *Defendini Collazo, et al. v. E.L.A., Cotto, supra*, página 61; *Berberena v. Echegoyen*, 128 D.P.R. 864, 879 (1991); *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715, 733 (1980); *Zachry International v. Tribunal Superior*, 104 D.P.R. 267, 277 (1975).

Por otro lado, el escrutinio tradicional es utilizado cuando la clasificación legislativa afecta *"intereses individuales importantes, aunque no sean necesariamente fundamentales, y el uso de criterios sensitivos de clasificación, aunque no sean necesariamente sospechosos,"* *León Rosario v. Torres, supra*, página 814 (1980). Dicho escrutinio requiere que la clasificación adelante un interés gubernamental legítimo y que esté sustancialmente relacionada con el mismo, *Defendini Collazo, et al. v. E.L.A., Cotto, supra*, página 61; *Berberena v. Echegoyen, supra*, página 879; *Vélez v. Srio. de Justicia*, 115 D.P.R. 533, 538 (1984).

A su vez, el escrutinio de nexo racional es el más leniente y el mismo es utilizado primordialmente para legislación de tipo socioeconómico. Al examinar una ley bajo ese escrutinio, la constitucionalidad de la misma es presumida y quien alega su inconstitucionalidad tiene el peso de probarla, *Soto Ortega v. Administración de Instituciones Juveniles*, *supra*, página 1264; *Pérez Vega v. Procurador Especial de Relaciones de Familia*, *supra*, páginas 962-963; *Salas v. Municipio de Moca*, 119 D.P.R. 625, 632 (1987); *M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319, páginas 332-333 (1987); *U.S. Brewers Assoc. v. Srio. de Hacienda*, 109 D.P.R. 456, 461 (1980).

Además, el escrutinio de nexo racional dispone que una clasificación legislativa no será declarada inválida *"a menos que sea claramente arbitraria y no pueda establecerse nexo racional alguno entre la misma y un interés legítimo del Estado,"* *Vélez v. Srio. de Justicia*, *supra*, página 538. Por lo tanto, la constitucionalidad de la ley será mantenida si puede ser concebida razonablemente una situación de hechos que justifique la clasificación, *Pérez Vega v. Procurador Especial de Relaciones de Familia*, *supra*, página 962; *Defendini Collazo, et al. v. E.L.A., Cotto*, *supra*, página 62; *Rodríguez Rodríguez v. E.L.A.*, *supra*, página 582.

Cuando un ciudadano alega que no recibió igual protección de la ley, la acción impugnada tiene que estar revestida de acción estatal. Esto es así, porque los derechos garantizados en la Sección 7 de la Carta de Derechos sólo pueden ser invocados ante la acción del gobierno y no pueden ser invocados ante actuaciones de particulares, *Berberena v. Echegoyen*, *supra*, página 878; *Berríos Miranda v. Asociación de Empleados*, 88 D. P.R. 809, 821-822 (1963).

Sin embargo, no toda discriminación viola el precepto de igual protección de las leyes porque dicha disposición no exige un trato igual para todos, sino que prohíbe un trato desigual injustificado. Las diferencias en el trato pueden ser establecidas si éstas tienen una justificación objetiva. El Estado puede hacer clasificaciones entre las personas sin infringir el principio de igual protección de las leyes, siempre que la clasificación sea razonable y con miras a la consecución o protección de un interés público legítimo, *Partido Acción Civil v. E.L.A.*, ____ D.P.R. ____ (2000), **2000 J.T.S. 33**, página 683; *Pérez Vega v. Procurador Especial de Relaciones de Familia*, *supra*, página 962; *Defendini Collazo, et al. v. E.L.A., Cotto*, *supra*, página 60; *Calo Morales v. Cartagena Calo*, 129 D.P.R. 102, 132-133 (1991); *Zachry International v. Tribunal Superior*, *supra*, páginas 276-277.

Por lo tanto, la cláusula de igual protección de la ley garantiza que, considerando el propósito y alcance de la ley, individuos que estén en situaciones similares sean tratados de modo similar por el Estado, *Partido Acción Civil v. E.L.A.*, *supra*, página 683; *Pérez Vega v. Procurador Especial de Relaciones de Familia*, *supra*, página 962; *Berberena v. Echegoyen, supra*, página 878.

## IV

En el presente recurso, el Municipio alega que el Tribunal de Primera Instancia erró al declarar que la Ley 29, *supra*, es constitucional y determinar que la misma no interfiere indebidamente con la Ley de Municipios Autónomos, *supra*. Sin embargo, luego de analizar el expediente de autos a la luz del derecho aplicable, resolvemos que dichos errores no fueron cometidos.

La Ley 29, *supra*, es una legislación de tipo socioeconómico que establece un nuevo esquema de financiamiento para la Reforma de Salud. Dicha reforma fue aprobada por la Asamblea Legislativa con el propósito de brindar servicios médico-hospitalarios de calidad para todos los sectores de la ciudadanía.

De su propia faz, no surge que el esquema de financiamiento establecido por la Ley 29, *supra*, infringe derechos fundamentales ni establece una clasificación sospechosa entre municipios. Según la referida ley, todos los municipios comprendidos dentro de una misma escala de aportación tienen que aportar el mismo por ciento de su presupuesto de fondos ordinarios a la ASES. Mientras mayor sea el presupuesto del municipio, mayor

será la aportación que éste tendrá que hacer a la ASES. Ello significa que la Ley 29, *supra*, brinda un trato similar a municipios similarmente situados en términos de presupuestos de fondos ordinarios y que, debido a ello, la cláusula constitucional de igual protección de las leyes no queda activada.

Sin embargo, aun en el supuesto de que la cláusula constitucional de igual protección de las leyes quedara activada, resolveríamos que la Ley 29, *supra*, es constitucional porque del escrutinio de la misma surge que hay un nexo racional entre el interés del Estado de brindar servicios médico-hospitalarios de calidad para todos los sectores de la ciudadanía y las escalas de aportaciones establecidas por dicha ley.

Por otro lado, contrario a lo señalado por el Municipio, la Ley 29, *supra*, no interfiere indebidamente con la Ley de Municipios Autónomos, *supra*. La Ley de Municipios Autónomos, *supra*, no alteró la organización y funcionamiento de los municipios en su relación con el Gobierno del ELA. Dicha ley estableció que la autonomía municipal estaba subordinada y debía ser ejercida de acuerdo a la Constitución y leyes del ELA.

Si bien es cierto que la Ley 29, *supra*, impuso a los municipios la obligación de aportar económicamente para el sostenimiento de la Reforma de Salud, también es cierto que dicha imposición no es incompatible con la autonomía conferida al Municipio por la Ley de Municipios Autónomos, *supra*, porque la misma no es absoluta y está subordinada a las Ley 29, *supra*; la cual fue aprobada por la Asamblea Legislativa en beneficio del interés apremiante del Estado de proteger la salud y el bienestar de los ciudadanos en general.

Por consiguiente, dado que la Ley 29, *supra*, no viola la cláusula constitucional de igual protección de las leyes ni trastoca la autonomía municipal conferida por la Ley de Municipios Autónomos, *supra*, resolvemos que el Tribunal de Primera Instancia actuó correctamente al declarar No Ha Lugar la Demanda presentada por el Municipio.

**V**

En virtud de los fundamentos anteriormente expuestos, **CONFIRMAMOS** la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 2002 DTA 145**

1. Sentencia Apelada, a las páginas 18 y 25-26.