EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Centro de Recaudación de Ingresos Municipales<br><br>    Demandante-peticionario<br><br>              vs.<br><br>Juan Carlos Méndez en su Capacidad oficial como Secretario de Departamento de Hacienda, y otros<br><br>    Demandados-recurridos | Certiorari<br><br>2008 TSPR 118<br><br>174 DPR \_\_\_\_ |

Número del Caso: CT-2007-8

Fecha: 14 de julio de 2008

Abogados de la Parte Peticionaria:

> Lcdo.José A. Acosta Grubb
> Lcda. María Luisa Montalvo Vera
> Lcdo. José L. Ramírez Coll

Abogado de la Parte Recurrida:

> Lcdo. José A. Acosta

Cámara de Representantes de Puerto Rico:

> Lcdo. Richard W. Markus
> Lcdo. Manuel D. Herrero
> Lcdo. Carlos E. Pérez Acosta
> Lcda. Janille Rodríguez Beamud

Asociación de Alcaldes de Puerto Rico:

> Lcdo. José A. Rivera Ayala
> Lcdo. Pedro E. Ortiz Alvarez

Federación de Alcaldes de Puerto Rico:

> Lcda. Carmen S. Curet Salim

Oficina del Procurador General:

> Lcdo. Salvador J. Antonetti-Stutts
> Procurador General
>
> Lcda. Maite D. Oronoz Rodríguez
> Subprocuradora General
>
> Lcda. Sarah Y. Rosado Morales
> Prouradora General Auxiliar

Materia: Certificación

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Centro de Recaudación de
Ingresos Municipales

    Demandante-peticionario

        vs.                        CT-2007-8    CERTIFICACIÓN

Juan Carlos Méndez en su
capacidad oficial como
Secretario de Departamento
de Hacienda, y otros

    Demandados-recurridos

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 14 de julio de 2008

El 18 de julio de 2007, el Centro de Recaudaciones de Ingresos Municipales (CRIM) presentó, ante la Sala Superior de San Juan del Tribunal de Primera Instancia, una demanda sobre *Mandamus* y Sentencia Declaratoria contra el Estado Libre Asociado, el Hon. Juan Carlos Méndez Torres, en su capacidad oficial de Secretario del Departamento de Hacienda y el Hon. José Guillermo Dávila Matos, en su capacidad oficial de Director de la Oficina de Gerencia y Presupuesto. En su demanda, el CRIM alegó que conforme a la Ley del Centro de Recaudación de Ingresos Municipales, Ley Núm. 80 de 30 de agosto de 1991, 21 L.P.R.A. §5801 *et seq.*, le correspondía el pago de la Aportación para Ingreso al Fondo de Equiparación de

Ingresos Municipales, partida conocida como el subsidio municipal, equivalente al 2.5% de las rentas internas netas del Fon General del Gobierno de Puerto Rico para el año fiscal 2007-2008. Señaló que bajo la referida Ley, el Secretario de Hacienda debía transferir al Banco Gubernamental de Fomento, no más tarde del décimo día de cada mes, una doceava parte del estimado de ingresos a recibirse en el año fiscal en cuestión, y el Banco a su vez le remitiría dichos fondos a los municipios no más tarde del decimoquinto día de cada mes; ello así ya que, a su juicio, el subsidio municipal es una asignación fija e ineludible.

El CRIM sostuvo que, en vista de que los ingresos estimados que le fueron notificados a los municipios para el año fiscal 2006-2007 ascendían a $9.09 billones, le correspondían al CRIM $227.25 millones, de los cuales sólo habían sido desembolsados $214.225 millones. Señaló que, en una carta suscrita por su Director, la OGP reconoció al CRIM un crédito de $13.025 millones[1] por concepto de la deficiencia en el pago del subsidio municipal respecto al año fiscal 2006-2007. Mientras, el CRIM indicó que los ingresos estimados para el año fiscal 2007-2008 ascendieron a $8.702 billones, por lo cual procedía el pago de $217.5 millones al CRIM, o sea, $18,129,166.67 mensuales. El CRIM

---

[1] De la carta de 30 de agosto de 2006 surge que la OGP le reconoció un crédito de $14,171,000 ya que, según expresó, la cantidad que le correspondía al CRIM para el año fiscal 2006-2007 era $230,649,000.

arguyó que, no obstante lo anterior, el Director de la OGP y el Secretario de Hacienda incumplieron con las obligaciones que le impone la Ley 80, ya que sólo desembolsaron $214.225 millones para el año fiscal 2006-2007 y $188.029 millones para el año fiscal 2007-2008, ambas cifras menores al 2.5% de los ingresos estimados para el Fondo General, no habiéndole satisfecho el crédito que le reconocieron de $13.025 millones.

Por todo lo antes expuesto, el CRIM solicitó al foro de instancia que: ordenara al Director de la OGP a autorizar la transferencia del subsidio municipal correcto, a saber: $18,129,166.67 mensuales, a partir del mes de julio del año fiscal 2007-2008 y le ordenara al Secretario de Hacienda a transferir inmediatamente $2,460,083.34, balance impagado a causa de la deficiencia en el pago por concepto de subsidio municipal que le fuera enviado al CRIM el 10 de julio de 2007 así como la transferencia de $18,129,166.67 en o antes del décimo día de cada mes del año fiscal 2007-2008. Por último, solicitó del tribunal que declarase que la OGP le había reconocido al CRIM un crédito de $13.025 millones, por concepto de un ajuste de las Rentas Internas Netas del Presupuesto aprobado para el año fiscal 2006-2007, y que ordenara el pago inmediato de dicha suma.

Luego de presentada la demanda, el CRIM presentó varias mociones solicitando la celebración de una vista, aduciendo la urgencia en la adjudicación del caso. De

hecho, el 24 de agosto de 2007, el CRIM solicitó la disposición sumaria del caso. A esos efectos, argumentó que la Ley 80 le imponía un deber ministerial al Secretario de Hacienda y al Director de la OGP de autorizar mensualmente el desembolso de una doceava (1/12) parte del subsidio municipal correspondiente al año fiscal en cuestión, que consistía de un 2.5% de las rentas internas netas del Fondo General. Sobre el particular, adujo que no existía controversia en torno a las cuantías que le correspondían por concepto del subsidio municipal establecido en la Ley 80 y el incumplimiento con el pago de las mismas. A saber, el 2.5% de $9.09 billones, ascendente a $227.25 millones para el año fiscal 2006-2007, y el 2.5% de $8.702 billones, ascendente a $217.55 millones para el año fiscal 2007-2008. En consecuencia, sostuvo que procedía el pago de $13.025 millones de ajuste para el año fiscal 2006-2007 ya que sólo se habían desembolsado $214.225 millones, y $4,920,166.68 correspondientes al balance impagado del subsidio municipal para los meses de julio y agosto de 2007, en los cuales sólo se desembolsaron $15,669,083.33 cada mes, cantidad inferior a la doceava parte del subsidio municipal de $217.55 millones para el año fiscal 2007-2008.

Durante la vista celebrada el 27 de agosto de 2007, las partes acordaron que la cuestión a resolverse era una de estricto derecho, por lo cual, sometieron una estipulación de hechos. Ello no obstante, el 31 de agosto de 2007, el Secretario de Hacienda, el Director de la OGP y

el ELA, por conducto del Departamento de Justicia, se opusieron a la solicitud de sentencia sumaria del CRIM y, a su vez, solicitaron la desestimación del pleito. Plantearon, en primer término, que el CRIM carecía de legitimación activa para presentar la demanda en cuestión porque, por tratarse de una cuestión política, cualquier reclamación sobre las cuantías asignadas para los años fiscales 2006-2007 y 2007-2008 debía ser planteada ante la Asamblea Legislativa y no ante el foro judicial. Sostuvieron que, de intervenir en el caso, el foro judicial estaría interfiriendo indebidamente con la Rama Ejecutiva y la Rama Legislativa, en violación al principio de separación de poderes. A su vez, adujeron la improcedencia del recurso de *mandamus,* bajo el fundamento de que las facultades de aprobar leyes o resoluciones conjuntas, de hacer cumplir las leyes, la de asignar fondos del presupuesto general y administrar dichos fondos, no estaban sujetas a ser revisadas judicialmente. Por último, alegaron que mediante la Resolución Conjunta 158 de 10 de julio de 2006, la Asamblea Legislativa le asignó al CRIM $214,225,000 por concepto del subsidio municipal para el año fiscal 2006-2007, y en la Resolución Conjunta 87 de 30 de junio de 2007, le asignó al CRIM $188,029,000 por concepto del subsidio municipal para el año fiscal 2007-2008. Sostuvieron que las referidas resoluciones conjuntas, las cuales tienen fuerza de ley, tuvieron el efecto de

modificar la Ley 80 en lo relativo al subsidio municipal correspondiente a los años fiscales 2006-2007 y 2007-2008.

El CRIM se opuso a la desestimación del pleito alegando que tenía legitimación activa ante la existencia de un daño claro, real e inmediato a raíz del incumplimiento con la Ley 80. A su vez, arguyó que una resolución conjunta no puede derogar una ley, y aun si así fuere, la derogación no puede ser tácita, y las resoluciones conjuntas en cuestión en momento alguno consignaron de forma expresa la derogación o modificación de la Ley 80.

El 21 de septiembre de 2007, el Tribunal de Primera Instancia emitió sentencia declarando <u>sin</u> lugar la demanda presentada por el CRIM. Aun cuando resolvió que el CRIM tenía legitimación activa para presentar la misma, concluyó que no existía un deber ministerial del Director de la OGP y del Secretario de Hacienda, al amparo de la Ley 80, por motivo de las Resoluciones Conjuntas 158 y 87, las cuales dejaron "en suspenso" la aplicación de la Ley 80 durante los años fiscales 2006-2007 y 2007-2008. A tales efectos, el foro recurrido sostuvo que "la Asamblea Legislativa tiene la facultad de suspender el efecto de una disposición legal, en este caso referente a la asignación presupuestaria, cuando en el ejercicio de sus prerrogativas lo entienda necesario para el buen funcionamiento gubernamental de acuerdo a la realidad fiscal del país."

De otra parte, el tribunal primario indicó que a pesar de que el Director de la OGP le cursó una carta al CRIM reconociendo una deuda de $13.025 millones, por concepto de la diferencia entre el subsidio municipal que le fue pagado y la cantidad que le correspondía al amparo de la Ley 80, ello constituyó un <u>error administrativo</u> que no podía crear derechos. Así, era improcedente el desembolso de dichos fondos cuando no existía una asignación válida de los mismos.

Inconforme con tal determinación, el CRIM acudió al Tribunal de Apelaciones. No obstante, el 16 de octubre de 2007 presentó una <u>solicitud de certificación</u> ante este Tribunal, solicitando que atendiéramos el caso de epígrafe, pretiriendo el cauce procesal ordinario. En su solicitud, plantea que erró el foro de instancia al concluir que las Resoluciones Conjuntas 158 y 87 tuvieron el efecto de suspender tácitamente las disposiciones de la Ley 80 sobre el subsidio municipal. Todas las partes se allanaron a la solicitud de certificación, por lo cual expedimos el recurso y, con el beneficio de la comparecencia de las partes, procedemos a resolver.

I

A

Es norma reiterada que los tribunales debemos ser guardianes celosos de nuestra jurisdicción. <u>Sánchez v. Secretario de Justicia</u>, 157 D.P.R. 360 (2002). Sobre ello,

hemos expresado que "[l]a jurisdicción, fuente principal de la autoridad de los tribunales para interpretar y hacer cumplir las leyes en nuestro sistema de gobierno, se halla gobernada por la aplicación de las diversas doctrinas que dan vida al principio de justiciabilidad…". Sánchez v. Secretario de Justicia, ante, a la pág. 370.

La legitimación activa es un instrumento de autolimitación judicial que tiene su génesis en la doctrina de la justiciabilidad de las controversias. Su función principal es asegurar que sólo se atiendan aquellos casos que presentan un caso o controversia que le permita al tribunal resolver controversias surgidas entre partes opuestas y concederles a éstas un remedio apropiado. Romero Barceló v. E.L.A., res. 10 de noviembre de 2006, 2006 TSPR 163. El promovente de la acción posee legitimación activa cuando "con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia". Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 413 (1982); Sánchez v. Secretario de Justicia, ante; Col. Ópticos de P.R. v. Vani Visual, 124 D.P.R. 559 (1989).

Una parte posee legitimación activa cuando demuestra: 1) que ha sufrido un daño claro y palpable; 2) que el daño es real, inmediato y preciso y no abstracto o hipotético; 3) que existe conexión entre el daño sufrido y la causa de acción ejercitada; y 4) que la causa de acción surge bajo el palio de la Constitución o de una ley. Romero Barceló v.

E.L.A., ante; Acevedo Vilá v. Aponte Hernández, res. 3 de julio de 2006, 2006 TSPR 115; Acevedo Vilá v. Meléndez Ortíz, res. 7 de junio de 2005, 2005 TSPR 79; Sánchez v. Secretario de Justicia, ante; Colegio de Peritos Electricistas v. A.E.E., 150 D.P.R. 327 (2000); Hernández Torres v. Hernández Colón, 129 D.P.R. 824 (1992); Hernández Agosto v. Romero Barceló, ante; PPD v. PNP, 139 D.P.R. 643 (1995).

Por el contrario, un caso no es justiciable cuando: plantea una cuestión política; cuando una de las partes no tiene capacidad jurídica para promover el pleito; si después de comenzado el pleito, hechos posteriores lo convierten en académico; y si las partes buscan obtener una opinión consultiva o se promueve un pleito que no está maduro. Córdova Iturregui v. González Rodríguez, res. 29 de junio de 2007, 2007 TSPR 133; Noriega v. Hernández Colón, 135 D.P.R. 406 (1994). Si bien en ocasiones previas hemos interpretado los requisitos sobre legitimación activa de forma flexible y liberal, tal discreción no es ilimitada. Col. Ópticos de P.R. v. Vani Visual, ante; Pacheco Fraticcelli v. Cintrón Antonsanti, 122 D.P.R. 229 (1988); Solís v. Municipio, 120 D.P.R. 53 (1987). Ello en vista de que los tribunales sólo podemos decidir controversias dentro de un contexto adversativo que sea susceptible de ser resuelto judicialmente y siempre teniendo como norte que nuestro sistema de separación de poderes limita nuestra intervención en aquellas materias que son del criterio

exclusivo de las otras ramas de gobierno. Acevedo Vilá v. Meléndez Ortíz, ante; Sánchez v. Secretario de Justicia, ante; Noriega v. Hernández Colón, ante; Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715 (1980).

De ordinario, las controversias que tratan sobre asuntos que le han sido delegados a otras ramas de gobierno se consideran de índole político y por tanto, constituyen una cuestión política que no es susceptible de ser resuelta judicialmente. Córdova Iturregui v. González Rodríguez, ante. Dicho de otro modo, una cuestión política es aquella que plantea asuntos que deben ser resueltos por las otras ramas de Gobierno. Sin embargo, ello no implica que todo asunto político sea una cuestión política. En Santa Aponte v. Secretario del Senado, 105 D.P.R. 750, 759 (1977), atendiendo la normativa establecida en Baker v. Carr, 369 U.S. 186 (1962)[2], resolvimos que aun cuando la Asamblea Legislativa y el Poder Ejecutivo tienen poderes y facultades exclusivas a cada rama, la "definición de sus contornos y la determinación de su ejercicio son asuntos cuidadosamente reservados a los tribunales." Son los

---

[2] El Tribunal Supremo de los Estados Unidos resolvió que una controversia plantea una cuestión política cuando: el asunto en controversia se ha delegado expresamente a otra rama del gobierno, hay una ausencia de normas judiciales sobre el asunto, resulta imposible adjudicar la controversia sin hacer una determinación de política pública que no le corresponde a los tribunales, requiere adherirse a una decisión política previa o cuando se genera un potencial de confusión debido a determinaciones conflictivas entre varios departamentos del Gobierno en torno al mismo asunto. Véase Silva v. Hernández Agosto, ante; Noriega v. Hernández Colón, ante.

tribunales los intérpretes finales de las leyes y la Constitución, e incluso, de las actuaciones de las otras ramas del Gobierno. Ello es necesario ya que una rama de gobierno no puede convertirse en juez de sus propias actuaciones. Así se vela el cumplimiento con el sistema de pesos y contrapesos. Acevedo Vilá v. Meléndez Ortíz, ante; Santa Aponte v. Secretario del Senado, ante; Silva v. Hernández Agosto, 118 D.P.R. 45 (1986); Noriega v. Hernández Colón, ante; PPD v. PNP, ante.

B

La Ley de la Judicatura de Puerto Rico nos confiere jurisdicción original para considerar en primera instancia los recursos de *mandamus*. Art. 3.002 de la Ley Núm. 201 de 22 de agosto de 2003, 4 L.P.R.A. §24s; Véase, además, los Artículos 649 y 650 del Código de Enjuiciamiento Civil, 32 LPRA §§3421-22. El *mandamus* es un recurso extraordinario y por tanto, discrecional y altamente privilegiado, mediante el cual se le ordena a una persona o entidad el cumplimiento de un acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes. Artículo 649 del Código de Enjuiciamiento Civil, 32 L.P.R.A. § 3421; sólo procede cuando sea el único remedio disponible en ley para la parte que lo solicita. Artículo 651 del Código de Enjuiciamiento Civil, 32 L.P.R.A. §3423. Sobre el particular, hemos expresado que procede "ordenar el cumplimiento de un deber ministerial, que no admite

discreción en su ejercicio, cuando no hay otro mecanismo en ley para conseguir dicho remedio." Acevedo Vilá v. Aponte Hernández, ante (citando a Báez Galib v. C.E.E., 152 D.P.R. 382 (2000)); Véase Córdova Iturregui v. González Rodríguez, ante.

Al determinar si se debe expedir un auto de *mandamus*, debe tomarse en cuenta el posible impacto que éste pueda tener sobre lo intereses públicos en cuestión y el potencial de confusión o perjuicios de los derechos de terceros, a la vez evitando una intromisión indebida en los procedimientos del poder ejecutivo. Noriega v. Hernández Colón, ante. Hemos destacado que "el posible impacto público que tendrá la expedición del *mandamus* será proporcional a la importancia del deber ministerial que se alega ha sido incumplido y que se pretende vindicar mediante el *mandamus*." Báez Galib v. C.E.E., ante, a la pág. 392. Es decir, su procedencia depende del carácter del acto que se pretende compeler mediante el recurso. Córdova Iturregui v. González Rodríguez, ante; Acevedo Vilá v. Aponte Hernández, ante.

C

Nuestra Constitución establece que "cualquier proyecto de ley que sea aprobado por una mayoría del número total de los miembros que componen cada cámara se someterá al Gobernador y se convertirá en ley si éste lo firma o si no lo devuelve con sus objeciones a la cámara de origen dentro

de diez días [sic] contados a partir de la fecha en que lo hubiese recibido." Si el Gobernador objeta la aprobación de un proyecto de ley, dicho proyecto sólo se convertirá en ley si es aprobado por dos terceras partes del número total de los miembros que componen cada cámara. Art. II, Sec. 19, Const. E.L.A., L.P.R.A. Tomo I.

A su vez, la Sección 18 del Artículo 3 de la Constitución, Tomo I, L.P.R.A., dispone que se determinarán por ley los asuntos que puedan ser objeto de consideración mediante resolución conjunta, pero toda resolución conjunta seguirá el mismo trámite de un proyecto de ley. La Ley sobre la Aprobación, Promulgación y Distribución de Leyes y Otros Documentos, Ley Núm. 2 de 4 de marzo de 1953, 2 L.P.R.A. §181 *et seq.*, reglamenta estatutariamente lo relativo a la aprobación de las leyes y, particularmente, las resoluciones conjuntas. A tales efectos, establece que "toda legislación que haya de perder su fuerza al realizarse la obra, o cumplirse la finalidad que persigue, será objeto de consideración por la Asamblea Legislativa mediante resolución conjunta y no formará parte de los estatutos permanentes de Puerto Rico." Sección 1, 2 L.P.R.A. §200. De modo que una resolución conjunta tiene una duración limitada. La Sección 3 aclara que ninguna medida será inválida porque se haya aprobado indebidamente como resolución conjunta, debiendo haberlo sido como ley, o porque se haya aprobado como ley, debiendo haberlo sido como resolución conjunta."

D

El CRIM es "una entidad municipal, independiente y separada de cualquier otra agencia o instrumentalizad del Gobierno…". Artículo 3 de la Ley 80, 21 L.P.R.A. §5802. Su propósito y responsabilidad primaria es recaudar, recibir y distribuir los fondos públicos provenientes de las diversas fuentes señaladas en su ley habilitadora.

Mediante el Artículo 15 de la referida Ley 80, 21 L.P.R.A. §5814, se creó el Fondo de Equiparación para los Municipios, con el propósito de mantener separados los fondos transferidos a los municipios de los demás fondos del Gobierno. Entre las partidas que reciben los municipios, al amparo de la Ley 80, se encuentra el subsidio municipal, cuantía que se computa a base de las rentas internas netas del Fondo General del Estado Libre Asociado[3].

Sobre el particular, el Artículo 16(c) de la Ley 80, 21 L.P.R.A. §5815, dispone que para el año fiscal 2001-2002 y para años fiscales subsiguientes, se transferirá a los municipios dos y cinco décimas por ciento (2.5%) de las rentas internas netas del Fondo General. Una vez se determina la cuantía correspondiente al 2.5% de las rentas internas netas del Fondo General del año fiscal en

---

[3] El Artículo 2 de la Ley 80, 21 L.P.R.A. §5801, define rentas internas netas como "el total de las rentas del Fondo General resultante luego de deducir los ingresos provenientes de fuentes externas, los ingresos no recurrentes y los ingresos con que se nutren las cuentas y fondos especiales."

cuestión, "el Secretario (de Hacienda) transferirá al Banco Gubernamental de Fomento, no más tarde del décimo día de cada mes, una doceava (1/12) parte del estimado de los ingresos a recibirse en el año fiscal de que se trate…". A su vez, no más tarde del decimoquinto día del mes, el Banco Gubernamental de Fomento remesará tales fondos a cada municipio. Artículos 16 y 18 de la Ley 80, 21 L.P.R.A. §§5815 y 5817.


## II

En su solicitud de certificación, el CRIM plantea que erró el tribunal de instancia al resolver que la Resolución Conjunta 158 y la Resolución Conjunta 87 suspendieron el efecto de la Ley 80 durante los años fiscales 2006-2007 y 2007-2008. A su juicio, tal alegada suspensión en realidad constituye una derogación tácita de una asignación autorrenovable establecida por ley, privando al CRIM permanentemente de la totalidad de los fondos correspondientes al subsidio municipal ya que en momento alguno se ha indicado que el pago de las cuantías adeudadas será satisfecho en una fecha posterior. Sostiene que una resolución conjunta no puede enmendar o derogar una ley de forma tácita ni dejar sin efecto una asignación autorrenovable y en su lugar, fijar una cantidad totalmente arbitraria.

Por su parte, los demandados alegan que la acción presentada por el CRIM no es justiciable porque la

controversia planteada es una cuestión política. A su juicio, todas las funciones relacionadas al presupuesto así como los desembolsos del presupuesto, son competencia exclusiva de las otras ramas del gobierno y no son susceptibles de adjudicación en el foro judicial. Sostienen que de intervenir el foro judicial en el presente caso, se provocaría un desbalance en el presupuesto ya que requeriría la asignación de fondos adicionales que no fueron contemplados; además, ello alegadamente constituiría una violación al principio de separación de poderes.

Los demandados también arguyen que la Resolución Conjunta 158 y la Resolución Conjunta 87 tuvieron el efecto de "suspender" temporalmente, no de derogar tácitamente, la aplicación de la Ley 80. Por lo cual, alegan que no cabe hablar de un deber ministerial del Secretario de Hacienda y el Director de la OGP, e igualmente, resulta improcedente el recurso de *mandamus*. Argumentan que las referidas resoluciones tienen los mismos efectos que una ley y, por ser posteriores a la Ley 80 e incompatibles con lo allí establecido, tienen primacía. Adicional a ello, señalan que nuestra Constitución no proscribe la suspensión temporera de una ley.

De entrada, es menester señalar que, contrario a lo planteado por los demandados, el CRIM posee legitimación activa para entablar la acción de epígrafe. Además de ser el organismo responsable del manejo de los fondos municipales, actualmente sufre un daño claro, real y

palpable, a saber, no ha recibido los fondos que le corresponden en virtud de la Ley 80. Ello tiene serias consecuencias para la administración y funcionamiento adecuado de todos los municipios. Adviértase, además, que según señalamos anteriormente, no todo asunto político es una cuestión política.

Nuestra intervención en el presente recurso no viola el principio de separación de poderes, ni se trata aquí de una cuestión política sino de la interpretación y armonización de una ley con unas resoluciones conjuntas, o sea, una cuestión de derecho, facultad que le compete exclusivamente a la Rama Judicial. Conforme ya destacamos, reiteradamente hemos resuelto que los tribunales son los intérpretes finales de las leyes y de nuestra Constitución.

De otra parte, el *mandamus* es el recurso apropiado cuando un funcionario público incumple un deber ministerial, es decir, con una obligación que le fue impuesta por ley. Ante el incumplimiento de parte de los demandados, el CRIM no tenía remedios alternos para solicitar el cumplimiento con lo dispuesto en la Ley 80. El planteamiento de los demandados en torno a que el CRIM debió acudir ante la Asamblea Legislativa es totalmente improcedente e irrazonable. Cuando se trata del cumplimiento de un deber impuesto por ley, los tribunales tienen la facultad para intervenir e interpretar el derecho aplicable.

Ciertamente, si bien la Sección 3 de la antes citada Ley 2 dispone que una resolución conjunta o una ley no perderá su validez por haber sido aprobada mediante el mecanismo incorrecto, aquí no se trata de invalidar una resolución conjunta que debió ser ley. Tampoco se trata de si una resolución conjunta debe ser aprobada mediante el mismo proceso que una ley y si tiene la misma validez. No cabe duda que las resoluciones conjuntas son mecanismos esenciales para una función legislativa adecuada y eficaz. Particularmente, han sido utilizadas comúnmente en lo relativo a los presupuestos. Sin embargo, el caso de marras presenta una situación diferente, a saber, el efecto de una resolución conjunta sobre una ley que establece una asignación fija y autorrenovable.

Esto es, el presente caso versa sobre unas resoluciones conjuntas mediante las cuales se intentó modificar tácitamente las disposiciones claras y vigentes de la Ley 80 sobre la asignación de fondos para el subsidio municipal. Del texto de la referida Ley surge palmariamente que el subsidio municipal es una asignación de 2.5%, fija y autorrenovable. En nuestro ordenamiento, la Rama Judicial y la Universidad de Puerto Rico también gozan de asignaciones fijas y autorrenovables. Ello le garantiza a dichas entidades una porción de los ingresos del Fondo General, sin la necesidad de justificar anualmente los fondos que necesitan para su funcionamiento adecuado. Véase Ley Núm. 286 de 20 de diciembre de 2002, 23 L.P.R.A. §104; Ley Núm.

2 de 20 de enero de 1966, según enmendada, 18 L.P.R.A. §521 *et seq.*

Adviértase que las partes estipularon ciertos hechos que no están en controversia, los cuales exponemos a continuación. En primer término, acordaron que el estimado de rentas internas netas del presupuesto aprobado para el año fiscal 2006-2007 era de $9.09 billones y que el 2.5% de tal cantidad era $227.25 millones, de lo cual sólo se le asignó al CRIM $214,225,000 mediante la Resolución Conjunta 158. De otra parte, estipularon que el estimado de rentas internas netas del presupuesto aprobado para el año fiscal 2007-2008 era de $8.702 billones y que el 2.5% de tal cantidad era $217.5 millones, de lo cual sólo se le asignó al CRIM $188,029 millones mediante la Resolución Conjunta 87. Para los meses de julio y agosto de 2007, el Departamento de Hacienda desembolsó al Banco Gubernamental de Fomento un total de $31,338,167 por concepto del subsidio municipal, es decir, desembolsó mensualmente 1/12 parte de $188,029 millones, lo cual equivale a $15,669,083.33 mensuales. Sin embargo, ambas partes reconocieron que 1/12 parte de $217.5 millones, el estimado de rentas internas netas del presupuesto aprobado para el año fiscal 2007-2008, equivale a $18,129,166.67.

Los demandados sostienen, repetimos, que a pesar de todo lo antes expuesto, no cabe hablar de un incumplimiento con la Ley 80 ya que las resoluciones conjuntas tuvieron el

efecto de suspender su efectividad durante los años fiscales 2006-2007 y 2007-2008. No les asiste la razón.

Distinto a lo alegado por los demandados, de las resoluciones conjuntas en cuestión no surge indicio alguno de la alegada intención de los legisladores de "suspender" o modificar lo dispuesto en la Ley 80. Incluso, del texto de ambas resoluciones conjuntas surge una intención contraria a lo que ahora alegan los demandados, ya que en éstas, al señalar la procedencia de las cuantías a ser concedidas al CRIM, la Asamblea Legislativa expuso que eran "[p]ara cumplir con la Aportación al Fondo de Equiparación, Ley Núm. 80 de 30 de agosto de 1991, según enmendada". Dicho de otro modo, reconocieron expresamente la vigencia, validez y obligatoriedad de la Ley 80.

Los demandados admiten que el 30 de agosto de 2006, el Director de la OGP le remitió una carta al Director Ejecutivo del CRIM, informándole que, a tenor con la Ley 80, el CRIM tenía un crédito a su favor de $14,171,000, por concepto del subsidio municipal. En la referida carta, el Director Ejecutivo de la OGP le informó al Director Ejecutivo del CRIM lo siguiente:

> [c]omo es de su conocimiento, durante el mes de junio de 2006 la Asamblea Legislativa aprobó la Resolución Conjunta de la Cámara Núm. 1408, la cual se convirtió en la Resolución Conjunta Núm. 158 de 10 de julio de 2006. Específicamente, en el inciso B 5(i) la Asamblea Legislativa reafirmó la vigencia de la Ley Número 80 de 30 de agosto de 1991, según enmendada, mejor conocida como: 'Ley del Centro de Recaudación de Ingresos Municipales'.

> De acuerdo con lo establecido en la Ley Núm. 80, *supra*, la cantidad que <u>debió incluirse</u> en la Resolución Conjunta era doscientos treinta millones seiscientos cuarenta y nueve mil dólares ($230,649,000), <u>y no</u> doscientos catorce millones doscientos veinticinco mil dólares ($214,225,000).
>
> A tales efectos, la Oficina de Gerencia y Presupuesto <u>reconoce que a tenor con lo dispuesto en la Ley Núm. 80, *supra*, usted tiene un crédito a su favor por catorce millones ciento setenta y un dólares ($14,171,000) que será sufragado al Centro de Recaudaciones de Ingresos Municipales cuando los ingresos del Estado así lo permitan</u>.
>
> Cordialmente,
> José Guillermo Dávila Matos (Énfasis suplido.)

Ante tal lenguaje <u>no</u> cabe hablar de un error administrativo <u>ni</u> de supuestas enmiendas a la Ley 80. Esto es, en la susodicha carta, cursada antes de la presentación de la demanda que motiva el presente recurso, <u>la OGP expresamente reconoció la validez de la Ley 80 así como la existencia de un crédito de $14,171 millones a favor del CRIM</u>.

De lo anterior claramente se infiere que la OGP reconoció que la Resolución Conjunta 158 tenía un <u>efecto transitorio</u>, y que una vez los fondos estuvieran disponibles, los mismos serían transferidos al CRIM. De igual forma, la Resolución Conjunta 87 también tiene un efecto transitorio, en tanto allí se reconoce la validez de la Ley 80 pero los fondos desembolsados son menores a los que asigna la referida Ley. Como consecuencia, el Departamento de Hacienda y la OGP <u>todavía le adeudan al</u>

CRIM la diferencia entre las cuantías pagadas por concepto del subsidio municipal para los años fiscales 2006-2007 y 2007-2008, y la cantidad que le correspondía en virtud de la Ley 80, o sea, el 2.5% del total de las rentas internas netas del Fondo General para los años fiscales en cuestión.[4]

En fin, la asignación autorrenovable de 2.5% del total de las rentas internas netas del Fondo General que establece la Ley 80, debió ser incluida correctamente al fijarse el presupuesto general. Es un porcentaje fijo que ha sido avalado por la Rama Legislativa y la Rama Ejecutiva desde que fue instaurado en nuestro ordenamiento jurídico. No podemos excusar su incumplimiento bajo el pretexto de que así hacerlo crearía un desbalance en el presupuesto. La Ley es clara y debió ser cumplida fielmente desde un principio.

III

En mérito de lo antes expuesto, procede decretar la revocación de la sentencia recurrida.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[4] En su demanda, en lo relativo al año fiscal 2007-2008, el CRIM sólo solicitó el pago de las deficiencias para el mes de julio, ya que la fecha de la presentación de la demanda fue el 18 de julio de 2007. Sin embargo, actualmente se le adeuda el pago de la deficiencia en el pago del subsidio municipal de los meses posteriores a julio de 2007 hasta el presente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Centro de Recaudación de
Ingresos Municipales

    Demandante-peticionario

       vs.                    CT-2007-8    CERTIFICACIÓN

Juan Carlos Méndez en su
capacidad oficial como
Secretario de Departamento
de Hacienda, y otros

    Demandados-recurridos


SENTENCIA

San Juan, Puerto Rico, a 14 de julio de 2008


     Por los fundamentos expuestos en la Opinión que antecede, la cual forma parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones.

     Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió Opinión de Conformidad.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Centro de Recaudación de
Ingresos Municipales

    Demandante-Peticionario

               v.

Juan Carlos Méndez en su         CT-2007-8     Certificación
capacidad oficial como
Secretario del Departamento
de Hacienda, y otros

    Demandados-Recurridos

Opinión de Conformidad emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 14 de julio de 2008.

Estamos conformes, en términos generales, con la Opinión del Tribunal y la determinación de revocar la sentencia apelada. Sin duda alguna, la Asamblea Legislativa y la Rama Ejecutiva no pueden asignar, mediante una resolución conjunta de presupuesto, una cantidad totalmente arbitraria y en contravención a las garantías de autonomía operacional que provee la tasa fija y autorrenovable establecida por ley a favor de ciertas entidades públicas. En vista de las ramificaciones positivas que tiene el desenlace de este caso en nuestro ordenamiento constitucional, deseamos reflexionar sobre el curso de acción seguido por la mayoría.

CT-2007-8

La controversia ante nuestra consideración es de estricto derecho. En esencia, ésta consistió en determinar si las Resoluciones Conjuntas 158 y 87 –correspondientes a los presupuestos gubernamentales de los años fiscales 2006-2007 y 2007-2008– tuvieron el efecto de suspender o derogar temporera y tácitamente la fórmula establecida por la Ley Núm. 80 de 30 de agosto de 1991, 21 L.P.R.A. sec. 5801 *et. seq.*, con relación al subsidio municipal que maneja el Centro de Recaudación de Ingresos Municipales (CRIM).

Ante la realidad fáctica que las mencionadas resoluciones conjuntas le asignaron al CRIM una cantidad significativamente menor a la correspondiente por concepto del subsidio municipal conforme a la fórmula impuesta por la Ley Núm. 80, *supra*, el Procurador General alega que el CRIM carece de legitimación activa para presentar la demanda de autos. A su juicio, la mencionada controversia trata de una cuestión política que sólo puede ser dilucidada ante la Asamblea Legislativa y no ante el foro judicial. A su vez, sostiene que de intervenir en el caso la Rama Judicial estaría interfiriendo indebidamente con las Ramas Ejecutiva y Legislativa, en violación a la doctrina de separación de poderes. Nada más lejos de la verdad.

La Constitución del Estado Libre Asociado de Puerto Rico dispone que "[s]e determinará por ley los asuntos que puedan ser objeto de consideración mediante resolución conjunta, pero toda resolución conjunta seguirá el mismo trámite de un proyecto de ley". Art. 3, Sec. 18, Const. E.L.A., L.P.R.A. Tomo 1. Las diferencias prácticas entre una resolución

conjunta y un proyecto de ley fueron objeto de un intenso debate de teoría constitucional y procedimiento legislativo por parte de la Convención Constituyente. Véase, *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, Tomo II, págs. 856-863.

En esa ocasión, el delegado Antonio Reyes Delgado expresó su preocupación en cuanto a que la referida disposición constitucional se pudiera interpretar para sugerir que la Asamblea Legislativa tiene la facultad de enmendar o modificar una ley o un código por virtud de una resolución conjunta, cuando la jurisprudencia interpretativa de la Ley Jones claramente establecía que tal acción legislativa no era posible. Valiente & Co. v. Sancho Bonet, Tes., 50 D.P.R. 586 (1936). En vista de ello, presentó una enmienda a los efectos de calificar que sólo los asuntos *especiales* pudieran ser objeto de consideración mediante resolución conjunta. *Id.,* pág. 857.

Dicha enmienda fue derrotada ante la oposición de los delegados Luis Negrón López y Celestino Iriarte, pues éstos expresaron que tal calificación no era necesaria porque el mismo precepto constitucional limitaba el mecanismo de la resolución conjunta "a los asuntos que se incluyan en la ley que apruebe la Asamblea Legislativa […] para dar cumplimiento a esta disposición constitucional, [los cuales] tendrán que ser asuntos especiales". *Id.,* pág. 860. Es decir, el consenso imperante en la Convención Constituyente fue que la resolución conjunta se podría utilizar como un mecanismo para

legislar asuntos especiales y transitorios, "sin otras consecuencias ulteriores". *Id.,* pág. 862. Sin embargo, en ningún momento se sugirió que la resolución conjunta puede ser utilizada para modificar, suspender o dejar sin efecto –aunque sea transitoriamente– una ley que forma parte de los estatutos permanentes del ordenamiento jurídico puertorriqueño.

En cumplimiento con el mandato constitucional antes mencionado, la Asamblea Legislativa aprobó la Ley sobre la Aprobación, Promulgación y Distribución de Leyes y Otros Documentos, Ley Núm. 2 de 4 de marzo de 1953, la cual definió la resolución conjunta como "[t]oda legislación que haya de perder su fuerza al realizarse la obra, o cumplirse la finalidad que persigue […] y no formará parte de los estatutos permanentes de Puerto Rico". 2 L.P.R.A. sec. 200. A su vez, dicha ley dispone que se excluyen de dicha definición de resolución conjunta "aquellos casos en que la materia que deba considerarse como resolución conjunta sea parte necesaria, aunque incidental, de una materia principal que deba considerarse mediante proyecto de ley". *Id.* Por otro lado, el referido estatuto dispone que "[n]inguna medida legislativa será inválida porque se haya aprobado indebidamente como resolución conjunta, debiendo haberlo sido como ley, o porque se haya aprobado como ley, debiendo haberlo sido como resolución conjunta". 2 L.P.R.A. sec. 201.

No obstante lo anterior, y como bien señala la Opinión del Tribunal, la controversia ante nos no trata sobre la validez

de una resolución conjunta que debió ser ley, sino sobre el efecto de una resolución conjunta contraria al mandato de una ley que requiere una asignación fija y autorrenovable con el fin de proteger la independencia operacional de la entidad pública en cuestión. Por tanto, somos del criterio que las resoluciones conjuntas en controversia constituyeron un intento por parte de las ramas políticas de modificar las disposiciones claras y precisas de la Ley Núm. 80, *supra*, que regulan la asignación de fondos con relación al subsidio municipal que administra el CRIM. Dicha ley establece que tal asignación es contingente a una tasa fija y autorrenovable de 2.5% de las rentas internas netas del Fondo General del gobierno en el año fiscal correspondiente, por lo que cualquier asignación menor para tales propósitos en una resolución conjunta de presupuesto adolece de nulidad por ser contraria al referido estatuto. 21 L.P.R.A. sec. 5815.

Más aún, las propias resoluciones conjuntas en controversia reconocieron la validez y obligatoriedad de la tasa fija y autorrenovable con relación al subsidio municipal, pues las partidas asignadas al CRIM se justificaron expresamente "para cumplir con la Aportación al Fondo de Equiparación, Ley Núm. 80 […]". Es por ello que nuestra intervención en el presente caso no constituye una mera revisión judicial de la facultad de aprobar leyes o resoluciones conjuntas, ni la de asignar fondos del presupuesto general o administrar dichos fondos. Todo lo contrario, pues la controversia ante nos evidentemente se

refiere, como acertadamente indica la Opinión del Tribunal, al cumplimiento del Poder Ejecutivo y Legislativo con un deber impuesto por ley, toda vez que la Ley 80 no ha sido derogada ni enmendada por ninguna ley posterior. Ante la situación fáctica de que los fondos asignados y desembolsados fueron menores a los que asigna la tasa fija y autorrenovable impuesta por el referido estatuto, el Departamento de Hacienda y la Oficina de Gerencia y Presupuesto todavía le adeudan al CRIM las cantidades estipuladas para los años fiscales 2006-2007 y 2007-2008.[5]

Por último, conviene mencionar que el Artículo 3 de la Ley Núm. 80, *supra*, enfatiza que el CRIM es "una entidad municipal, **independiente y separada** de cualquier otra agencia o instrumentalidad del Gobierno…". 21 L.P.R.A. sec. 5802. (Énfasis nuestro). Cónsono con ello, las asignaciones fijas y autorrenovables establecidas por ley para el CRIM, así como las fórmulas presupuestarias establecidas por ley para la Universidad de Puerto Rico y la Rama Judicial, le proveen

---

[5] En atención a que los tribunales son los intérpretes finales de las leyes, la Constitución y de las actuaciones de las otras ramas, la controversia ante nos sobre la validez de una resolución conjunta que contradice el texto de una ley es claramente justiciable. Nuestra intervención en el presente caso es fundamental, pues una rama de gobierno no puede convertirse en juez de sus propias actuaciones cuando éstas contravienen el sistema de pesos y contrapesos que delinea la Constitución. La Constitución le confiere determinadas facultades al Poder Legislativo y Ejecutivo, pero la definición de sus contornos y la determinación de la validez de su ejercicio son asuntos reservados a los tribunales. Véanse Acevedo Vilá v. Meléndez Ortiz, res. 7 de junio de 2005, 2005 TSPR 79; Noriega Rodríguez v. Hernández Colón, 135 D.P.R. 406 (1994); Santa Aponte v. Srio. del Senado, 105 D.P.R. 750 (1977).

automáticamente a dichas entidades una porción de los ingresos del Fondo General sin sujeción al vaivén electoral y partidista del momento. La integridad de estas asignaciones garantiza la autonomía operacional de las instrumentalidades públicas concernidas, pues no se requiere que éstas justifiquen anualmente ante la Asamblea Legislativa los fondos particulares que necesitan para su funcionamiento adecuado. Véanse Ley Núm. 80, *supra*; Ley Núm. 286 de 20 de diciembre de 2002, 23 L.P.R.A. sec. 104; Ley Núm. 2 de 20 de enero de 1966, 18 L.P.R.A. sec. 521. Es por ello que cualquier intento –por medio de una resolución conjunta– de reducir, suspender o derogar la cuantía proporcional establecida por ley para estas entidades públicas independientes constituye una acción nula y ultra vires que contraviene el estado de derecho vigente.

Por todo lo antes expuesto, no cabe duda que las ramas políticas deben cumplir con el claro mandato de la ley, asignando las partidas por concepto del subsidio municipal de conformidad con la tasa fija y autorrenovable que establece la Ley Núm. 80, *supra*. Por ende, estamos conformes con la Opinión del Tribunal.


Federico Hernández Denton
Juez Presidente