

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Danosa Caribbean, Inc.<br><br>　　　Peticionaria<br><br>　　　　v.<br><br>Negociado de Asistencia<br>Contributiva y Consultas<br>Especializadas<br><br>　　　Recurridos | Certiorari<br><br>2012 TSPR 105<br><br>185 DPR ____ |

Número del Caso: CC-2011-526

Fecha: 22 de junio de 2012

Tribunal de Apelaciones:

　　　　Región Judicial de San Juan

Abogada de la Parte Peticionaria:

　　　　Lcda. Margarita Carrillo Iturrino

Oficina del Procurador General:

　　　　Lcdo. Luis R. Román Negrón
　　　　Procurador General

　　　　Lcda. Amir Cristina Nieves Villegas
　　　　Procuradora General Auxiliar

Materia: Contribuciones – Dos productos derivados del petróleo exentos del pago de IVU; Arbitrios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Danosa Caribbean, Inc.
      Peticionaria

                        CC-2011-526    *Certiorari*

      v.


Negociado de Asistencia Contributiva y Consultas Especializadas
      Recurridos


Opinión del Tribunal emitida por la Jueza Asociada señora Fiol Matta.


En San Juan, Puerto Rico, a 22 de junio de 2012.

Nos corresponde determinar si un producto para la impermeabilización de techos compuesto mayormente por una sustancia derivada del petróleo está exento del pago del Impuesto sobre Ventas y Uso (IVU) establecido por la Ley Núm. 117 del 4 de julio de 2006, conocida como la Ley de Justicia Contributiva. Como veremos, la solución adecuada de esta controversia requiere un ejercicio integral de interpretación estatutaria que no puede limitarse al examen aislado de las diversas secciones de las leyes y reglamentos aplicables.

I

La peticionaria Danosa Caribbean, Inc. (Danosa) se dedica a la manufactura de productos derivados del petróleo, particularmente, pero no exclusivamente, el asfalto. Los productos principales manufacturados por la peticionaria son impermeabilizantes de techo. El 27 de febrero de 2007, Danosa solicitó al Departamento de Hacienda una exención del pago del Impuesto sobre Ventas y Uso (IVU), alegando que la Ley Núm. 117 excluía los productos derivados del petróleo del concepto de propiedad mueble tangible sujeto al IVU. Dado que la sustancia principal empleada en sus productos terminados es el asfalto, un derivado del petróleo, Danosa sostiene que ello le exime automáticamente del pago del IVU. Por su parte, el Negociado de Asistencia Contributiva y Consultas Especiales del Departamento de Hacienda denegó la petición de Danosa, expresando que los productos manufacturados por la peticionaria "no se identificaban como productos derivados del petróleo".[1] La agencia basó su determinación en una lectura complementaria de la sección 2005 del Código de Rentas Internas de 1994, vigente al momento, y el Reglamento Núm. 7249 del Departamento de Hacienda. Acto seguido, Danosa apeló a la Secretaría de Procedimiento Adjudicativo de dicha agencia. Por su parte, el organismo apelativo administrativo concluyó que "no es ostensible que los productos manufacturados por Danosa

_____

[1] Sentencia del Tribunal de Apelaciones, a la pág. 2.

fueran identificados en el comercio como productos de petróleo; que se mercadeaban como producto de impermeabilización; que ninguno de los nombres comerciales de los productos se identificaban como productos de petróleo", por lo que no estaban incluidos entre las exenciones al IVU.[2]

Inconforme con la determinación de la agencia, Danosa recurrió al Tribunal de Apelaciones, que confirmó la decisión recurrida. Según el foro intermedio, la regla general en cuanto al IVU es que éste aplicará a todas las transacciones comerciales, a menos que caiga dentro de una de las excepciones establecidas. De igual forma, el tribunal enfatizó que los artículos derivados del petróleo excluidos del IVU estatutariamente tenían en común la característica de ser combustibles. En particular, el foro apelativo observó que el esquema estatutario contributivo vigente se basaba en la regla general que los productos que pagaran arbitrios estarían excluidos del IVU, y *viceversa*. Por tanto, recurrió a la parte del Código de Rentas Internas que gobierna el cobro de arbitrios, según quedó enmendado por la Ley Núm. 117. El Tribunal de Apelaciones se percató que esas secciones del Código sobre arbitrios incluían la gasolina, el combustible de aviación, el *"gas oil"* o *"diesel oil"* y otros productos derivados del petróleo. Es decir, que para evitar la doble tributación, el legislador excluyó del IVU

---

[2] *Id*, a la pág. 3.

aquellos productos que pagaban arbitrios, mientras que excluyó del pago de arbitrios aquellos productos susceptibles del IVU. Dado que los productos de Danosa estaban excluidos del pago de arbitrios, el Tribunal de Apelaciones resolvió que éstos estaban incluidos en el concepto de propiedad mueble tangible sujeto al IVU.

En cuanto a la alegación de Danosa de que el Reglamento aprobado por el Departamento de Hacienda añadió de manera *ultra vires* el requisito de que los productos eximidos del IVU tenían que ser comúnmente identificados como derivados del petróleo, en aparente contradicción con la Ley Núm. 117, el Tribunal de Apelaciones resolvió que la agencia no incorporó requisito adicional alguno, sino que recurrió a la sección vigente del Código de Rentas Internas sobre el cobro de arbitrios que expresamente **excluía** como productos sujetos al pago de arbitrios aquellos derivados del petróleo "**que luego de terminados no se identifican como productos de petróleo** gravados por este Subtítulo".[3] Es decir, que el Reglamento de la agencia adoptó el lenguaje inclusivo de la sección sobre el pago de arbitrios para que correspondiera con los requisitos de la exención al pago del IVU. De esa forma, como el Reglamento era compatible con la totalidad del Código de Rentas Internas según quedó enmendado por la Ley Núm. 117, el Tribunal de Apelaciones resolvió que el

---

[3] (Énfasis suplido) *Id*, a la pág. 7, citando la sección 2010 del Código de Rentas Internas de 1994.

Reglamento era válido y, por tanto, los productos de Danosa estaban sujetos al pago del IVU.

Danosa recurrió ante este Tribunal y presentó varios argumentos. En primer lugar, sostiene que la Ley Núm. 117 únicamente establece como requisito para quedar eximido del pago del IVU que el producto manufacturado sea un derivado del petróleo u otra mezcla de hidrocarburos. Por tanto, entiende que una vez se determina que la composición química de un producto lo clasifica como mayormente derivado del petróleo, ello es suficiente para quedar excluido de la definición de propiedad mueble tangible sujeta al IVU.[4] Como la ley del IVU no impone otro requisito, Danosa alega que el Departamento de Hacienda actuó *ultra* vires al requerir, además de la composición química, que el producto se identifique comúnmente como derivado del petróleo. Insiste en que ante esa contradicción, el Reglamento debe ceder a la voluntad legislativa. En la alternativa, Danosa argumenta que el criterio reglamentario es vago y arbitrario y que las etiquetas comerciales de sus productos evidencian que éstos

---

[4] En su petición de *certiorari*, Danosa explica con detalle el proceso de manufactura de sus productos, así como la naturaleza física y química de éstos. En particular, nos ofrece como ejemplo varios de sus productos cuya composición química oscila entre 49.3% y 79.7% de asfalto (bitumen) y otros productos derivado del petróleo como el polímero EBE (SBS), nafta, butadieno, poliéster, entre otros. Petición de *certiorari*, a la pág. 4. Por eso nos solicita que ignoremos el ejemplo utilizado en el Reglamento del Departamento de Hacienda en cuanto al asfalto utilizado en la construcción de carretera, pues dicho producto solamente tiene un 7% de asfalto. *Id*, n. 20.

son derivados del petróleo, cumpliendo así el requisito reglamentario.[5]

El 21 de octubre de 2011 expedimos el auto de *certiorari* y solicitamos al Procurador General que, en su alegato, diera particular atención a lo planteado por la peticionaria en cuanto a la validez de la sección del Reglamento que incorporó el requisito previamente aludido, a la luz de la Ley Núm. 117. En su comparecencia, el Procurador General adelanta varios argumentos que son altamente ilustradores. En primer lugar, cuestiona el estándar de revisión de "evidencia sustancial" propuesto por Danosa, pues dicho estándar aplica en los procesos adjudicativos, mientras que el ataque de la peticionaria a la validez del reglamento requiere un estándar que mida el ejercicio de la facultad legislativa de la agencia. Lo que procede, por tanto, es determinar si el reglamento es arbitrario o caprichoso, o si se excede de lo autorizado por la legislatura.

De igual forma, el Procurador General nos invita a que analicemos el esquema contributivo del IVU en su totalidad, haciendo referencia constante tanto a la política pública que lo apoya como a las demás secciones del Código de Rentas Internas que lo complementan. Es decir, que no estudiemos únicamente las secciones del Código relacionadas con el IVU, sino que hagamos una lectura integral del Código en su

---

[5] Apéndice petición de *certiorari*, a la pág. 28.

totalidad, particularmente la parte referente a los arbitrios. De esa lectura integrada, el Procurador deriva varias conclusiones: (1) que el elemento común para la exención del pago del IVU a productos derivados del petróleo es que sirvan como combustibles; (2) que el diseño legislativo de incluir ciertos productos en el pago de arbitrios mientras se excluyen del IVU es evitar la doble tributación y (3) que el requisito de que el producto eximido se identifique comúnmente como derivado del petróleo se incluyó en el Reglamento del Departamento de Hacienda precisamente porque estos productos así identificados están sujetos al pago de arbitrios.

II

Antes de aprobarse la Ley Núm. 117 del 4 de agosto de 2006, la mayoría de los productos vendidos en Puerto Rico estaban sujetos al pago de arbitrios generales, entre estos la gasolina y otros combustibles derivados del petróleo. El tema del pago de contribuciones producto de la venta de estos productos derivados del petróleo ha sido una constante en nuestro ordenamiento tributario. Mediante la Ley Núm. 2 de 20 de enero de 1956,[6] se estableció un impuesto sobre artículos de uso y consumo en Puerto Rico que incluyó la gasolina y otros combustibles como el "*gas oil*" y el "*diesel*

---

[6] Ley de Impuesto Sobre Artículos de Uso y Consumo de Puerto Rico.

*oil"*.[7] Igualmente presente han estado las <u>exenciones</u> al pago de contribuciones de algunos de estos productos.[8] En 1987, se aprobó la Ley de Arbitrios de Puerto Rico que derogó la Ley Núm. 2 y estableció un esquema tributario comprensivo.[9] La sección 2.001 de esa Ley establecía:

> Se impondrá, cobrará y pagará, a los tipos prescritos en las secciones 2.002 a 2.010, inclusive, de este Capítulo, un arbitrio sobre el azúcar, el cemento fabricado localmente o introducido en Puerto Rico, los cigarrillos, <u>la gasolina, el combustible de aviación, el *"gas oil"* o *"diesel oil"*, el petróleo crudo, los productos parcialmente elaborados y terminados derivados del petróleo, así como sobre cualquier otra mezcla de hidrocarburos</u>…[10]

Por otra parte, la Ley de Arbitrios de 1987 distinguía entre aquellos productos identificados específicamente como combustibles –gasolina, combustible de aviación, *"gas oil"* y *"diesel oil"*-[11] y otros derivados del petróleo.[12] De igual

---

[7] *Id*, artículos 30 y 37, respectivamente.

[8] *Véase, por ejemplo*, el artículo 30(b) de la Ley Núm. 2, *supra*, que eximía del pago de este impuesto a gasolina que era utilizada por la Guardia Nacional o el gobierno federal, se exportaba fuera de la isla o se catalogaba como contaminada.

[9] Ley Núm. 5 del 8 de octubre de 1987.

[10] (Énfasis suplido) *Id*, sección 2.001.

[11] *Id*, sección 2.005.

[12] "Petróleo crudo, Productos Parcialmente Elaborados y Productos Terminados Derivados del Petróleo y Cualquier Otra Mezcla de Hidrocarburos", *Id*, sección 2.006. Ahora bien, como veremos más adelante, el elemento común entre todos estos productos es que pueden ser utilizados como combustibles.

forma, por razones de política pública la ley excluyó algunos de estos productos del pago de arbitrios.[13] Otros productos, como el asfalto, el etano y butano, entre otros, también fueron excluidos del pago de arbitrios, aunque con efectos distintos de los que correspondían a los productos mencionados en la sección 2.006.[14] Es decir, no se trató de igual forma a todos los derivados del petróleo, pues la exclusión total respondía más a cuestiones de política pública que a la mera composición química de los productos.

El esquema contributivo cambió en 1994 con la aprobación del Código de Rentas Internas, vigente al momento de la controversia de autos.[15] Este Código derogó la Ley de Arbitrios de 1987 e incluyó un subtítulo dedicado exclusivamente al tema de los arbitrios.[16] De esta forma, el cobro de arbitrios pasó a ser una parte de un esquema contributivo más amplio cuyos diferentes componentes se complementarían entre sí.

---

[13] *Véase Id*, sección 2.006(b): productos utilizados por la Autoridad de Energía Eléctrica o el gobierno federal, productos para la exportación y productos a ser utilizados en refinerías o petroquímicas, entre otros. Como veremos, estas excepciones aplicarán a todo tipo de contribución, por lo que no les aplica la regla de que el producto que no paga arbitrios pagará el IVU, y *viceversa.*

[14] *Id*, sección 2.008.

[15] Ley Núm. 120 de 31 de octubre de 1994.

[16] Subtítulo B. Como veremos, la Ley Núm. 117 enmendaría el Código de Rentas Internas e incorporaría las secciones relativas al IVU como Subtítulo BB, denotando así un vínculo inexorable entre el cobro de arbitrios y el pago del IVU.

La sección 2005 del Código de Rentas Internas de 1994 estableció un arbitrio general sobre artículos vendidos en Puerto Rico:

> Se impondrá, cobrará y pagará a los tipos prescritos en la[s] secciones 2006 a 2015, inclusive, de este Subtítulo un arbitrio sobre el azúcar, las bebidas carbonatadas, el cemento fabricado localmente o introducido en Puerto Rico, los cigarrillos, la gasolina, el combustible de aviación, el "*gas oil*" o "*diesel oil*", el petróleo crudo, los productos parcialmente elaborados y terminados derivados del petróleo, así como sobre cualquier otra mezcla de hidrocarburo, los vehículos de motor…La aplicación de este impuesto estará sujeta a las exenciones establecidas en el Capítulo III de este Subtítulo.[17]

Como se puede notar de lo anterior, el texto estatutario original en cuanto a los arbitrios sobre la gasolina y demás derivados del petróleo ha perdurado a través del tiempo. Igualmente constantes han sido las excepciones de todo tipo de tributación concedidas a algunos productos de petróleo utilizados para ciertos fines específicos, como la generación de electricidad por la Autoridad de Energía Eléctrica y la exportación.[18]

Al igual que la Ley de Arbitrios de 1987, el Código de Rentas Internas de 1994 dividió en dos secciones separadas,

---

[17] (Énfasis suplido) Sección 2005 del Código de Rentas Internas de 1994.

[18] *Id*, sección 2011(b). La Asamblea Legislativa también ha sido consistente en excluir de este listado de productos del petróleo algunas sustancias como el propano, butano, butileno, entre otros. Sección 2010(b). Estas secciones responden a la numeración original del estatuto.

pero secuenciales, el trato contributivo correspondiente a la gasolina y demás combustibles, y la de los otros productos derivados del petróleo.[19] Ahora bien, desde 1994 están **excluidos** del pago de **arbitrios** aquellos derivados del petróleo y cualquier otra mezcla de hidrocarburos "**que luego de terminados no se identifican como productos de petróleo gravados por este Subtítulo**".[20] Es decir, fueron excluidos del pago de arbitrios algunos productos que, a pesar de ser derivados del petróleo por razones de su composición química, no eran identificados como tal, por lo cual serían tratados de manera distinta. Finalmente, cabe destacar que tras varias enmiendas a las secciones 2005, 2010 y 2011 del Código de Rentas Internas, el mandato legislativo se mantuvo igual.[21] Posteriormente, las secciones 2010 y 2011 del Código de 1994 pasaron a ser las secciones 2009 y 2010, respectivamente.

La Ley Núm. 117 de 4 de julio de 2006, conocida como la Ley de la Justicia Contributiva, enmendó varias disposiciones del Código de Rentas Internas de 1994 para,

---

[19] Secciones 2010 y 2011 del Código de Rentas Internas de 1994.

[20] (Énfasis suplido). Sección 2011(b)(5) de la numeración original, ahora sección 2010(c)(5). Además, dicha sección dispone que "[t]oda persona cubierta por esta exención deberá tener el reconocimiento y autorización previa del Secretario [de Hacienda]". (Énfasis suplido) Id.

[21] Véanse las Leyes Núm. 78 de 31 de mayo de 1998 y Núm. 200 de 30 de julio de 1999 que incorporaron otros productos eximidos del pago de arbitrios. Ninguno afectó el tipo de producto manufacturado por la peticionaria Danosa.

entre otras cosas, crear un Impuesto sobre Ventas y Uso (IVU). Por eso, las secciones relativas al IVU deben analizarse e interpretarse como parte del Código de Rentas Internas, según quedó enmendado, y no como un esquema tributario aislado e independiente. Veamos ahora más de cerca la Ley Núm. 117.

La Exposición de Motivos de la Ley, en lo pertinente, lee como sigue:

> El arbitrio general se sustituye por un IVU. Los productos que antes estaban sujetos al arbitrio general estarán sujetos al IVU. Se mantienen arbitrios sobre ciertos artículos que, por sus peculiaridades, requieren disposiciones separadas, estos son: los cigarrillos, la gasolina y otros combustibles, los vehículos y las bebidas alcohólicas.
> Las exenciones al IVU se limitan a medicamentos recetados y otras exenciones vinculadas con el desarrollo económico de Puerto Rico o inherentes a un sistema de IVU, entre ellas la materia prima para la manufactura, productos exportados y los combustibles comprados por la Autoridad de Energía Eléctrica para la producción de energía eléctrica.
> …
> Por otra parte, la asignación de los impuestos de venta sobre gasolina y otros combustibles … se mantienen.[22]

Según se desprende claramente de la Exposición de Motivos, el objetivo perseguido por la Ley Núm. 117 era crear un esquema contributivo que combinara el cobro de arbitrios con el pago del IVU. De esa manera, la mayoría de los productos vendidos en Puerto Rico, salvo algunos que

---

[22] (Énfasis suplido) Exposición de Motivos de la Ley Núm. 117, a las págs. 2-3.

quedaron excluidos totalmente por razones de política pública, estaría sujeto a una de estas contribuciones. Para ello, la Asamblea Legislativa atemperó el Subtítulo de arbitrios (B) con el nuevo subtítulo del IVU (BB).

El artículo 16 de la Ley Núm. 117 enmendó varias secciones del Subtítulo B del Código de Rentas Internas, relativo al cobro de arbitrios. Entre las secciones que versan sobre los productos derivados del petróleo, la sección 2005 del Código de Rentas Internas quedó modificada de la siguiente manera:

> Se impondrá, cobrará y pagará, a los tipos establecidos en las secciones 2006 a 2010, inclusive, de este Subtítulo un arbitrio sobre el cemento fabricado localmente o introducido en Puerto Rico, productos plásticos, la introducción o fabricación de cigarrillos, la gasolina, el combustible de aviación, el "gas oil" o "diesel oil", el petróleo crudo, los productos elaborados y terminados derivados de petróleo, así como sobre cualquier otra mezcla de hidrocarburos, y los vehículos de motor. El arbitrio fijado regirá si el artículo ha sido introducido, vendido, consumido, usado, traspasado o adquirido en Puerto Rico, y se pagará una sola vez, en el tipo y en la forma especificados en el Capítulo 6 de este Subtítulo. La aplicación del impuesto estará sujeto a las exenciones concedidas en el Capítulo 3 de este Subtítulo.

Por otra parte, la Ley Núm. 117 también enmendó las secciones 2009 y 2010 (antes 2010 y 2011), las que atienden, respectivamente y de manera más específica, el cobro de arbitrios para la gasolina y otros combustibles, así como el petróleo crudo y otros derivados del petróleo. La nueva sección 2009 del Código de Rentas Internas atendió

específicamente el caso de los "combustibles", tales como la gasolina, el combustible de aviación y el "*gas oil*" o "*diesel oil*".[23] En particular, la sección 2009 enmendada definió detalladamente qué constituía un combustible y excluyó varios gases licuados como el propano, butano, etano, etileno, butileno y cualquier mezcla de los mismos.[24] Ahora bien, el artículo 16 de la Ley Núm. 117 añadió una parte importante a la sección 2009: "Los artículos, incluyendo la gasolina, el combustible de aviación y el "*gas oil*" o "*diesel oil*" o cualquier otro combustible, sujeto a las disposiciones de esta Sección, <u>estarán exentos de los impuestos de venta y uso establecidos en el Subtítulo BB</u>".[25] De esa manera, a la gasolina y demás combustibles se les aplicaría un arbitrio pero estarían excluidos del IVU para evitar la doble tributación.

Por su parte, la sección 2010 enmendada atendió el cobro de arbitrios al petróleo crudo y otros derivados de petróleo que no cayeran bajo la clasificación de combustibles de la sección 2009:[26]

> Además de cualquier arbitrio fijado en este Subtítulo, se impondrá, cobrará y pagará un impuesto por el uso en Puerto Rico de petróleo crudo, de productos parcialmente elaborados o de

---

[23] 13 L.P.R.A. sec. 9010.

[24] 13 L.P.R.A. sec. 9010(b).

[25] (Énfasis suplido) 13 L.P.R.A. sec. 9010(d).

[26] Los productos de la peticionaria coinciden más con los productos identificados en esta sección.

productos terminados derivados del petróleo y de cualquier otra mezcla de hidrocarburos a los tipos fijados en la siguiente tabla…[27]

Esta regla general de tributación a los productos derivados del petróleo tendría ciertas exenciones:

(c) Exclusiones del gravamen - El impuesto fijado en esta sección no será aplicable al:

(1) Petróleo crudo, productos parcialmente elaborados, los productos terminados derivados del petróleo, ni a cualquier otra mezcla de hidrocarburos utilizado por la Autoridad de Energía Eléctrica para generación de electricidad.

(2) …

(3) …

(4) …

(5) Petróleo crudo, productos parcialmente elaborados, productos terminados derivados del petróleo o cualquier otra mezcla de hidrocarburos utilizada en la elaboración de artículos que luego de terminados **no se identifican como productos de petróleo** gravados por este Subtítulo. Toda persona cubierta por esta exención deberá tener el reconocimiento y autorización previa del Secretario [de Hacienda].

(6) …

(7) …

(8) …

(9) Los artículos, incluyendo el petróleo crudo, los productos parcialmente elaborados o los productos terminados derivados del petróleo y de cualquier otra mezcla de hidrocarburos, sujeto a las disposiciones de esta Sección

---

[27] 13 L.P.R.A. sec. 9011(a).

> estarán exentos de los impuestos de
> venta y uso establecidos en el Subtítulo
> BB.[28]

De lo anterior surgen con meridiana claridad dos asuntos fundamentales. Primero, que la exclusión del pago de arbitrios de los productos derivados del petróleo se limitó a aquellos que no se identificaran como tal. Es decir, que si el artículo en cuestión, a pesar de tener una composición química que lo clasifica como un producto derivado del petróleo, no se identifica como tal, estará excluido del pago de arbitrios. En segundo lugar, y como consecuencia de lo anterior, surge que los artículos que luego de terminados no se identifican como productos derivados del petróleo no estarán excluidos del pago del IVU. De esta manera, un artículo manufacturado con productos derivados del petróleo que no se identifica como tal estará excluido del arbitrio pero estaría incluido en el IVU.

Tras modificar el esquema del cobro de arbitrios dispuesto en el Subtítulo B, la Ley Núm. 117 introdujo un nuevo Subtítulo BB para estructurar el cobro del impuesto sobre ventas y uso. Por su importancia, reproducimos las secciones relevantes a la controversia de autos:

Sección 2301(dd) – Partida Tributable

> Propiedad mueble tangible, servicios
> tributables, derechos de admisión y
> transacciones combinadas.[29]

---

[28] (Énfasis suplido) 13 L.P.R.A. 9011(c).

Sección 2301(jj) – Propiedad mueble tangible

Incluye artículos o propiedad mueble que puede ser vista, pesada, medida o palpable, o es de cualquier forma perceptible a los sentidos, o que es susceptible de apropiación, incluyendo programas de computadoras y tarjetas prepagadas de llamadas, entre otros. El término "propiedad mueble tangible" <u>excluye</u> el dinero o el equivalente de dinero, acciones, bonos, notas, pagarés, hipotecas, seguros, valores u otras obligaciones; automóviles, propulsores, omnibuses y camiones; los intangibles; <u>la gasolina, combustible de aviación, el "*gas oil*" o "*diesel oil*", el petróleo crudo, los productos parcialmente elaborados y terminados derivados del petróleo, y cualquier otra mezcla de hidrocarburos;</u> la electricidad generada por la Autoridad de Energía Eléctrica o cualquier otra entidad generadora de electricidad; y el agua suplida por la Autoridad de Acueductos y Alcantarillados.[30]

Como puede notarse, al enmendar el Subtítulo B y añadir el Subtítulo BB del Código de Rentas Internas de 1994, la Asamblea Legislativa diseñó un sistema contributivo basado, en parte, en una combinación de arbitrios y del IVU. Por eso la legislatura utilizó un texto virtualmente idéntico para la secciones 2005, 2010(a) y 2010(c) (Subtítulo B – Arbitrios) y la sección 2301(jj) (Subtítulo BB – IVU). Por un lado, la sección 2010(c) <u>incluyó</u> en el pago de <u>arbitrios</u> los productos derivados del petróleo, <u>excluyendo los que no se identifican como tal</u>. Por otro lado, esta sección <u>excluyó</u> del pago del <u>IVU</u> a los productos que <u>sí se identifican</u> como

---

[29] 13 L.P.R.A. sec. 9091(dd).

[30] (Énfasis suplido) 13 L.P.R.A. sec. 9091(jj).

derivados del petróleo. En esa misma dirección, la sección 2301(jj) <u>excluyó</u> del pago del IVU los productos incluidos en la sección 2005 y no excluidos por la sección 2010(c). De esa manera se intentó precisar la combinación arbitrios-IVU incluyendo en uno lo que se excluía del otro.

Por su parte, en el uso de sus amplios poderes de reglamentación,[31] el Secretario de Hacienda aprobó el Reglamento Núm. 7249 de 14 de noviembre de 2006.[32] Según el preámbulo, "[e]ste Reglamento recoge las disposiciones del Subtítulo BB del Código <u>y otras disposiciones complementarias del Código</u> y provee, en el mayor grado de detalle posible, explicaciones prácticas y ejemplos de transacciones con el fin de dar certeza en cuanto a la aplicación del IVU".[33] Es decir, que al adoptar el Reglamento, se tomó en consideración tanto el Subtítulo BB (IVU) como el Subtítulo B (Arbitrios), de manera que el Reglamento canalizara la totalidad del esquema contributivo establecido por el Código de Rentas Internas, según enmendado por la Ley Núm. 117.

---

[31] Este poder de reglamentación ha sido delegado consistentemente por la Asamblea Legislativa. *Véase, por ejemplo,* el artículo 78 de la Ley Núm. 2 de 20 de enero de 1956. En la Ley Núm. 117, ese poder está recogido en 13 L.P.R.A. secs. 9091b y 9093(a), entre otros.

[32] Reglamento para Implantar las Disposiciones del Subtítulo BB – Impuesto sobre Ventas y Uso de la Ley Núm. 120 de 31 de octubre de 1994, según enmendada, conocida como "Código de Rentas Internas de Puerto Rico".

[33] (Énfasis suplido) *Id*, a la pág. 1.

La sección 2301-1(jj)(2) del Reglamento Núm. 7249 excluye del pago del IVU:

> [L]a gasolina, el combustible de aviación, el "*gas oil*" o "*diesel oil*", el petróleo crudo, los productos parcialmente elaborados y terminados derivados del petróleo, y cualquier otra mezcla de hidrocarburos, tales como propano, butano, etano, propileno, butileno y cualquier mezcla de los mismos. <u>Sin embargo, los productos parcialmente elaborados y productos terminados derivados del petróleo</u> **<u>que luego de terminados comúnmente no se identifiquen como productos del petróleo, se considerarán propiedad mueble tangible</u>**.[34]

Según la peticionaria Danosa, esta última oración de la sección 2301-1(jj)(2) del Reglamento es *ultra vires* pues incorpora un elemento que no fue establecido por la legislatura; entiéndase, que el producto derivado del petróleo no se identifique comúnmente como tal. Si bien es cierto que la sección 2301(jj) del Subtítulo BB del Código de Rentas Internas no incluye ese elemento, <u>no podemos olvidar que la sección 2010(c)(5) del Subtítulo B sí lo menciona</u>. De esa forma, el Reglamento tomó en consideración la totalidad del Código de Rentas Internas y logró establecer con mayor precisión lo que la Asamblea Legislativa quiso hacer: excluir del IVU únicamente aquellos productos derivados del petróleo que pagan arbitrios y aquellos cuya exclusión estuviese basada en consideraciones

---

[34] (Énfasis suplido) *Id*, sección 2301(jj)(2). Acto seguido, el Reglamento ofrece como ejemplo de las exclusiones provistas por esta sección el asfalto utilizado en las carreteras: "El asfalto, aunque es un producto derivado del petróleo, se considerará propiedad mueble tangible, ya que éste luego de terminado no se identifica como producto de petróleo". *Id*.

de política pública. No podemos olvidar que el Reglamento Núm. 7249 se fundamentó en la totalidad del Código de Rentas Internas de 1994 y no únicamente en el Subtítulo BB. En ese sentido, el Secretario podía incorporar a la sección 2301-1(jj)(2) el texto estatutario utilizado en la sección 2010(c)(5) del Subtítulo B. De esta manera, además de evitar la doble tributación, se impide que un producto quede incorrectamente libre de toda contribución, salvo los casos expresamente excluidos tanto del arbitrio como del IVU. Por último, cabe destacar que el Código de Rentas Internas de 2011 mantuvo el esquema contributivo previamente explicado.[35]

En cuanto al Reglamento Núm. 7249, no podemos perder de perspectiva que éste debe conformarse a la totalidad del Código de Rentas Internas, según quedó enmendado por la Ley Núm. 117, y no únicamente al Subtítulo BB. Por eso, el Reglamento incorporó el texto estatutario empleado en otras

---

[35] Mediante la Ley Núm. 1 de 31 de enero de 2011, la Asamblea Legislativa aprobó un nuevo Código de Rentas Internas. El cobro de arbitrios está establecido por el Subtítulo C, mientras que el IVU se codifica en el Subtítulo D. En primer lugar, la sección 3020.01 del Código de 2011 mantiene el arbitrio a la gasolina, ciertos combustibles y los productos derivados del petróleo, manteniendo, para evitar la doble tributación, la exclusión de estos productos en cuanto el IVU. De igual forma, la sección 3020.07(i)(5) excluye del arbitrio los productos derivados del petróleo "que luego de terminados no se identifiquen como productos de petróleo gravados por este subtítulo. Toda persona cubierta por esta exención deberá tener el reconocimiento y autorización previa del Secretario". De esa forma, al excluir estos productos del arbitrio general, se permite su tributación bajo el IVU.

partes del Código, de manera que se pudiese aplicar adecuadamente el esquema contributivo adoptado por la Legislatura. Por tanto, es forzoso concluir que el Reglamento no es *ultra vires*. De igual forma, no podemos olvidar que en nuestro ordenamiento tributario, si bien se aplicará una interpretación restrictiva en contra del Estado y a favor del ciudadano cuando haya duda sobre el cobro de una contribución, en el caso específico de exenciones, excepciones y alivios contributivos, la norma interpretativa es que "toda duda debe resolverse en contra de la existencia de la exención".[36]

En resumen, mediante las enmiendas introducidas por la Ley Núm. 117, se adoptó un esquema contributivo que combinó arbitrios con el Impuesto sobre Ventas y Uso. En particular, se diseñó un sistema basado, primeramente, en la exclusión de ciertos productos de toda carga contributiva y, en segundo lugar, en evitar la doble tributación del resto de los productos. Así, todo producto incluido en el pago de arbitrios estaría excluido del IVU. En sentido contrario, los productos excluidos del cobro de arbitrios estarán sujetos al IVU.

En virtud de lo anterior, resolvemos que los productos cuya composición química los clasifica como derivados del

---

[36] Lever Bros. Export Corp. v. Alcalde de S.J., 140 D.P.R. 152, 161-162 (1996). Véase, además, Yiyi Motors v. E.L.A., 177 D.P.R. 230, 250-251 (2009) y B.B.C. Realty v. Secretario Hacienda, 166 D.P.R. 498, 508-512 (2005).

petróleo pero que comúnmente no se identifican como tal, estarán sujetos al pago del Impuesto sobre Ventas y Uso establecido en el Código de Rentas Internas.

### III

En el caso de autos, los productos manufacturados por Danosa son, en términos de su composición química, derivados del petróleo. No obstante, a juicio del Departamento de Hacienda, estos productos terminados –utilizados mayormente para sellar techos- no se identifican comúnmente como tal. De ser así, no estarían excluidos del pago del IVU por disposición de las secciones 2010(c)(5) y 2301(jj) del Código de Rentas Internas y la sección 2301-1(jj)(2) del Reglamento Núm. 7249. En cuanto a ello, la peticionaria adelanta dos argumentos.

Expone, en primer lugar, que el criterio de "que luego de terminados comúnmente no se identifiquen como productos del petróleo" es vago y carece de parámetros. Por tanto, se presta para una interpretación y aplicación arbitraria y caprichosa. En la alternativa, sostiene que el que las etiquetas de sus productos identifiquen a los mismos como derivados del petróleo cumple la exigencia reglamentaria.

En cuanto al primer planteamiento, hay que hacer un señalamiento de entrada. No podemos olvidar que el criterio impugnado de "que luego de terminados no se identifiquen como productos del petróleo" existe tanto estatutariamente

en la sección 2010(c)(5) del Código de Rentas Internas de 1994 -sección 3020.07(i)(5) del Código de 2011- como reglamentariamente en la sección 2301-1(jj)(2) del Reglamento Núm. 7249. Por tanto, no podemos abordar el asunto exclusivamente desde la óptica de impugnación de reglamentos, pues se está cuestionando igualmente el diseño legislativo.

En el contexto estatutario, "una ley es nula por vaguedad si sus prohibiciones no están claramente definidas".[37] Hemos resuelto que una ley adolece de vaguedad si (1) una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir o penalizar; (2) se presta a la aplicación arbitraria y discriminatoria, y (3) interfiere con el ejercicio de derechos fundamentales garantizados por la Constitución.[38] Ahora bien, la doctrina de vaguedad aplica a estatutos de carácter punitivo que prohíben o penalizan. Ese no es el caso ante nuestra consideración. La peticionaria Danosa, al alegar que el criterio escogido por la Asamblea Legislativa y, por consiguiente, por el Secretario de Hacienda, es arbitrario, caprichoso y potencialmente discriminatorio, está haciendo un planteamiento de debido proceso de ley e igual protección de las leyes. En nuestro

---

[37] Pacheco Fraticelli v. Cintrón Antonsanti, 122 D.P.R. 229, 239 (1988).

[38] Id, a las págs. 240-241.

ordenamiento, este tipo de impugnación de reglamentación socioeconómica está sujeta a un análisis de racionalidad mínima.[39]

Al precisar si una agencia ha excedido su autoridad en el ámbito reglamentario, le corresponde al tribunal evaluar: (1) si a la agencia se le delegó poder de reglamentación; (2) si la actuación administrativa está autorizada por ley; (3) si la reglamentación promulgada está dentro de los poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley habilitadora de la agencia y la L.P.A.U., y (5) si la reglamentación es arbitraria o caprichosa.[40] Es decir, en cuanto a la validez de la reglamentación, aplicaremos un análisis de razonabilidad. Ahora bien, en el contexto de un proceso de revisión administrativa, el estándar aplicable es el de evidencia sustancial en el marco de una amplia deferencia al peritaje de la agencia. Evidentemente, el Departamento de Hacienda es la agencia con el peritaje adecuado para atender este tipo de controversia, por lo que los tribunales nos abstendremos de interferir con sus determinaciones de hecho salvo que éstas no tengan apoyo en la evidencia sustancial.

En el caso de autos, el Departamento de Hacienda determinó que los productos de impermeabilización de techos

---

[39] Pueblo Int'l. v. Srio. de Justicia, 122 D.P.R. 703 (1988), Op. Concurrente Negrón García, a las págs. 721-722.

[40] Pérez v. Com. Rel. Trab. Serv. Pub., 158 D.P.R. 180 (2002).

de Danosa no se identifican comúnmente como productos derivados del petróleo. Además, al repasar el desarrollo estatutario de las contribuciones impuestas sobre productos derivados del petróleo, notamos un denominador común entre los productos mencionados: todos son combustible o sustancias relacionadas. Evidentemente, el producto manufacturado por la peticionaria queda fuera de esa definición. Pero lo que es más, ante el amplio grado de deferencia que los tribunales le debemos a las determinaciones de las agencias administrativas en estos asuntos, no podemos concluir que la decisión de la agencia sea irrazonable, arbitraria, caprichosa o discriminatoria. Por el contrario, es perfectamente razonable que el Departamento de Hacienda concluya que un sellador de techo compuesto mayormente por asfalto no es un producto comúnmente identificado como derivado del petróleo, para propósitos de una ley que, al identificar los productos derivados de petróleo, se refiere en todo caso a productos que comparten la característica de ser combustibles u otros relacionados. Se trata de una definición con un alto contenido de política pública contributiva que venimos llamados a respetar. Danosa no nos ha puesto en posición de desviarnos de esa conclusión. El que las etiquetas de algunos de los productos de Danosa se auto identifiquen como derivados del petróleo no derrota la determinación de hecho en contrario de la agencia.

En virtud lo anterior, concluimos que el Tribunal de Apelaciones no erró al confirmar la decisión de la agencia de denegar la solicitud de Danosa de que se le eximiese del pago del IVU. Por tanto, procede confirmar la decisión del foro apelativo.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Danosa Caribbean, Inc.

Peticionaria

*Certiorari*

CC-2011-526

v.

Negociado de Asistencia Contributiva y Consultas Especializadas

Recurridos

*SENTENCIA*

En San Juan, Puerto Rico, a 22 de junio de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la sentencia del Tribunal de Apelaciones.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo